## ROTHSCHILD *v.* KNIGHT.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 108. Submitted October 21, 1901.—Decided March 3, 1902.

A motion being made to dismiss the writ of error in this case on the ground that no Federal question was raised in the Superior Court of Massachusetts this court holds that as Federal questions were raised on writ of error to the Supreme Court of that State, that was sufficient to give this court jurisdiction.

The objection that the writ of error should have been directed to the Supreme Court, and not to the Superior Court, is answered by *McDonald* v. *Massachusetts*, 180 U. S. 311.

To what actions the remedy of attachment may be given is for the legislature of a State to determine: the power of counsel extends to consenting to amendments authorized by the law of the State.

The contention that the debts due to plaintiffs in error by certain citizens of Massachusetts were not subject to attachment in that State because their situs was in New York cannot be maintained.

The preference given by McKeon to plaintiffs in error was consummated in Massachusetts; and therefore the proceedings had in New York were immaterial.

James McKeon was a retail merchant in Springfield, Massachusetts, and became indebted to plaintiffs in error in the sum of about $4000.

The indebtedness being overdue, Frank J. Rothschild, Jr., son of one of the plaintiffs in error, went to Springfield with full

power to collect the debt. When there, he received from McKeon a quantity of fur garments, part of McKeon's stock. The garments had not been purchased of plaintiffs in error, and when they were received by Rothschild, Jr., for plaintiffs in error he knew McKeon was insolvent.

The furs were sent to the railroad station in trunks, checked and taken to New York as the personal baggage of Rothschild, Jr. A receipted bill or list of the goods was delivered by McKeon to Rothschild, Jr. Subsequently, however, in New York it was testified that McKeon " tore from the bill the receipt and wrote on the bill the word abbreviation ' Memo.' to indicate that the goods were on memorandum or consignment, and the defendant said that he would write to his bookkeeper that night and have the entry in his books made to conform with the bill by writing in the word ' Memo.' "

This was done by the advice of the attorney of plaintiffs in error, and so stated by him in an affidavit filed in an action brought by plaintiffs in error in the Supreme Court of the city and county of New York against McKeon.

The advice was given, the attorney deposed, in order to make the transaction appear what it was stated in his presence to be; that is, for security only, and not for the sale of the goods; and he advised a suit by plaintiffs in error against McKeon and an attachment of the goods. The suit was subsequently brought and the goods attached.

On the 20th of December, 1895, McKeon was adjudged an insolvent in Massachusetts, and the defendant in error was appointed his assignee, and as such he brought this action by trustee process in the superior court for Hampden County, Massachusetts, for the value of goods conveyed by McKeon to plaintiffs in error, on the ground that the conveyance was made in fraud of the insolvency laws of Massachusetts. The officer's return on the writ showed service on the trustees, but none on the plaintiffs in error.

The writ was duly entered on the first Monday in May, 1896, and a declaration for goods sold and delivered by McKeon to the plaintiffs in error was duly filed. Subsequently upon its being brought to the notice of the court that plaintiffs in error

were not inhabitants of the Commonwealth of Massachusetts, notice was ordered to be given to them by publication, and that the action be continued until such notice should be given. The notice was returnable on the first Monday in September, 1896, and was given as ordered, but no return or proof of it was made until July 6, 1899. On the 16th of September, 1896, plaintiffs in error (defendants in the action) appeared generally by their attorney, Charles C. Spillman, Esq., thereto duly authorized. On October 12, following, defendant in error (plaintiff) moved to amend his declaration, to which counsel for plaintiffs in error consented, and it was allowed. Plaintiffs in error filed an answer denying each and every allegation in the original and amended declaration. On June 21, 1897, the defendant in error again amended his declaration with the consent of E. N. Hill, Esq., who was then acting as counsel for plaintiffs in error, having been retained generally by plaintiffs in error, though his written appearance was not entered until June 26. By virtue of his general authority he could consent to the allowance of amendments. He conducted the case for plaintiffs in error.

The amendment added two counts to the declaration, charging the conveyance to plaintiffs in error by McKeon as having been made to prevent the property from coming to his assignee in insolvency, in fraud of the laws of the State relating to insolvent debtors.

The jury rendered a verdict against the plaintiffs in error for the sum of $6420, and they moved for a new trial by their attorney, E. N. Hill. On the 31st of July, 1897, plaintiffs in error " alleged sundry exceptions to the opinions and rulings of the court, which, being found conformable to the truth, were allowed and signed by the presiding judge, and the questions were transmitted to the Supreme Judicial Court for consideration."

The bill of exceptions contained the evidence, and concluded as follows :

" Upon this evidence the defendants asked the court to rule that there was no evidence to warrant the finding that McKeon intended to prefer the defendants or intended to prevent this property from coming into the possession of the assignee or

from being distributed according to the laws relating to insolvency, and that the action could not be maintained.    The court refused so to rule and the defendants duly excepted.

"And the defendants being aggrieved by these rulings and refusals to rule, and having excepted thereto, after verdict against them, pray that their exceptions and their exceptions to the admission of testimony as hereinbefore stated, be allowed."

On the 15th of February, 1898, the motion for a new trial was denied, and on the 28th of February, 1899, a rescript was received from the Supreme Judicial Court overruling the exceptions of plaintiffs in error.

On the 6th of March, 1899, judgment was entered against plaintiffs in error "for the sum of seven thousand and seventy-one dollars and sixty-three cents, damages, and costs of suit, taxed at ninety-one dollars and seven cents, and that execution therefor issue against the goods, effects and credits of the said defendants in the hands and possession of the said trustees, Smith & Murray and Houston & Henderson, who were by the court adjudged to be trustees" of plaintiffs in error.

On May 12, 1898, plaintiffs in error filed an assignment of errors under the state practice as follows:

"1. That the record discloses that there was no valid and effectual attachment of the goods, estate or effects of the plaintiffs in error upon the writ, which is the necessary foundation of the jurisdiction of said Superior Court to support any proceeding against an unserved, absent defendant.

"2. That the record discloses that the action was an attempt to obtain jurisdiction over these non-resident plaintiffs in error by means of trusteeing a debt due them, and said attempt was an infringement of the rights of the plaintiffs in error as guaranteed by the Constitution of the United States.

"3. That the record discloses that neither the plaintiffs in error nor either of them were voluntarily before said Superior Court, and the record fails to show any service upon them, either personally or by publication, as ordered by said court.

"4. That the record discloses that the judgment, if allowed to stand, will deprive these plaintiffs in error of their property,

contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States.

\*     \*     \*     \*     \*     \*     \*     \*

" 10. That the record discloses that the various amendments to the declaration of the defendants in error converted the action into one for the recovery of a penalty, and that such attempt is an infringement of the rights, privileges and immunities of the plaintiffs in error, guaranteed by the Fourteenth Amendment to the Constitution of the United States.

" 11. That the record discloses that there were counts in the declaration of the defendants in error, which under the laws of this Commonwealth involved a penalty, and that a judgment on said counts would be conclusive on these plaintiffs in error as to their liability therefor, and would, without further trial, subject their rights to such penalty, and that such attempt to obtain jurisdiction over the persons or property of these plaintiffs in error, by the trustee process served on a debtor in this State for the purpose of fixing upon them a liability for such penalty is contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States."

The assignments of error were subsequently amended by adding the following:

" 16. That the record discloses that the judgment, if allowed to stand, will impair the obligation of contracts, contrary to the Constitution of the United States.

" 17. That the record discloses that the Superior Court did not give full faith and credit to the judicial proceedings of the courts of New York, as required by the Constitution of the United States."

On the 17th of June, 1898, the defendant in error filed his plea and traverse. A hearing was subsequently had before a single justice to establish the plea and traverse, who, a doubt being suggested as to his authority to dispose of the case, after finding the facts, reported the case to the full court. The case was heard by the Supreme Court, and on May 15, 1900, a rescript was sent to the Superior Court affirming the judgment. 176 Mass. 48. This writ of error was then sued out and allowed by the Chief Justice of the Superior Court.

*Mr. Robert A. Knight* and *Mr. Charles M. Rice* for the motion to dismiss or affirm.

*Mr. Harry J. Jaquith* and *Mr. Thomas J. Barry* opposing.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

A motion is made to dismiss the writ of error upon the ground that no Federal question was raised in the Superior Court. Federal questions were raised, however, on writ of error to the Supreme Court, and that, we think, was a sufficient claim. *Meyer* v. *Richmond,* 172 U. S. 82; *Arrowsmith* v. *Harmoning,* 118 U. S. 194; *Sully* v. *American National Bank,* 178 U. S. 289.

The objection that the writ of error should have been directed to the Supreme Court and not to the Superior Court is answered by *McDonald* v. *Massachusetts,* 180 U. S. 311.

The constitutional questions raised by plaintiffs in error are (1) that they have been deprived of their property without due process of law; (2) that if the judgment be allowed to stand it will impair the obligation of contracts, contrary to the Constitution of the United States; (3) that full faith and credit was not given to certain judicial proceedings had in the Supreme Court of the State of New York.

(1) (2) These grounds may be considered together. To sustain them plaintiffs in error assert the invalidity of certain public statutes of Massachusetts, viz., chapter 164, relating to absent defendants; chapter 183, relating to the trustee process; and chapter 157, relating to insolvency.

The sections in regard to insolvency are inserted in the margin.[1]

---

[1] The sections of the insolvency laws of Massachusetts, under which the action was originally brought in the Superior Court of Massachusetts, are sections 96 and 98 of Chapter 157 of the Massachusetts Public Statutes, and are as follows:

"Sec. 96. If a person, being insolvent or in contemplation of insolvency, within six months before the filing of the petition by or against him, with

The provisions relating to trustee process are as follows :

" Sec. 21. When a person who is summoned as trustee has goods, effects or credits of the defendant intrusted or deposited in his hands or possession, such goods, effects and credits shall be hereby attached and held to respond to the final judgment in the suit, in like manner as goods or estate attached by the ordinary process, except as hereinbefore provided."

" Sec. 25. Any money or other thing due to the defendant may be attached, as herein mentioned, before it has become payable, if it is due absolutely and without any contingency; but the trustee shall not be compelled to pay or deliver it before the time appointed by the contract."

It is difficult to state the argument made to support the contention of plaintiffs in error. It rests ultimately on a claim of immunity from suit in Massachusetts and a claim of immunity from attachment of debts due plaintiffs in error from citizens of

---

a view to give a preference to a creditor or person who has a claim against him, or is under any liability for him, procures any part of his property to be attached, sequestered or seized on execution, or makes any payment, pledge, assignment, transfer or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent or in contemplation of insolvency, and that such payment, pledge, assignment or conveyance is made in fraud of the laws relating to insolvency, the same shall be void; and the assignee may recover the property or the value of it from the person so receiving it or so to be benefited."

" Sec. 98. If a person, being insolvent or in contemplation of insolvency, within six months before the filing of the petition by or against him, makes a sale, assignment, transfer or other conveyance of any description, of any part of his property to a person who then has reasonable cause to believe him to be insolvent or in contemplation of insolvency, and that such sale, assignment, transfer or other conveyance is made with a view to prevent the property from coming to his assignee in insolvency, or to prevent the same from being distributed under the laws relating to insolvency, or to defeat the object of, or in any way to impair, hinder, impede or delay the operation and effect of, or to evade any of said provisions, the sale, assignment, transfer or conveyance shall be void, and the assignee may recover the property or the value thereof as assets of the insolvency. And if such sale, assignment, transfer or conveyance is not made in the usual and ordinary course of business of the debtor, that fact shall be *prima facie* evidence of such cause of belief."

Massachusetts. Argumentatively, it is said that the action originally brought did not justify trustee process, and that the amendments subsequently made to the declaration were not authorized, though consented to by counsel who appeared in and conducted the case. We do not assent to either proposition.

To what actions the remedy of attachment may be given is for the legislature of a State to determine and its courts to decide, and the power of counsel certainly extends to consenting to amendments authorized by the laws of the State. Indeed, it would be novel to hold that the court could not have granted the amendments, even against the opposition of counsel, without violating the Constitution of the United States. And the contention that the debts due to plaintiffs in error by certain citizens of Massachusetts were not subject to attachment in that State because their situs was in New York, cannot be maintained. We decided adversely to the proposition in *Chicago, Rock Island &c. Ry.* v. *Sturm,* 174 U. S. 710. That case was followed and applied in *King* v. *Cross,* 175 U. S. 396, and we are satisfied with the reasoning of both cases.

But it is urged that the transaction between McKeon and the agent of the plaintiffs in error did not constitute a debt, but was in the nature of an offence to which a penalty was incident, and to the commission of the offence an intent was necessary, and that the intent of the agent of plaintiffs in error could not be ascribed to them. The Supreme Court of the State, however, decided that "the action is not for recovery of a penalty, but to recover the value of goods conveyed in fraud of the laws relating to insolvency, and it properly might be commenced by trustee process. Pub. Sts. c. 157, §§ 96, 97 ; c. 183, § 1."

We need only add that the law would be of little value if its prohibition did not apply to non-resident creditors, whether acting directly or through an agent. That the conveyance to plaintiffs in error was made to give a fraudulent preference must necessarily have been found as a fact by the jury, and such finding we accept.

(3) No record was introduced in evidence of the judicial proceedings to which, it is claimed, faith and credit were not given. The only evidence in regard to the proceedings consisted of

the affidavit already referred to, and an affidavit of like import made by S. Rothschild, one of the plaintiffs in error. The affidavits were introduced by defendants in error. On behalf of plaintiffs in error Frank J. Rothschild testified as follows: "These goods (meaning the goods received from McKeon) were attached by Simon Rothschild & Bro., and were sold by order of the sheriff. We bought them, that is, Simon Rothschild & Bro. bought them, at the sheriff's sale."

Assuming, but not deciding, that such evidence was sufficient, and that a record properly authenticated was not necessary to give the plaintiffs in error the benefit of the Constitution and statutory provisions, the proceedings, notwithstanding, did not constitute a defence to the action. The preference given by McKeon to plaintiffs in error was consummated in Massachusetts. Therefore the proceedings had in New York were immaterial.

Finding no error in the record, judgment is

*Affirmed.*