FAMILY FINANCE CORPORATION OF BAY VIEW, Respondent, v. SNIADACH, Appellant: MILLER HARRIS INSTRUMENT COMPANY, Garnishee.*

*November 3—December 8, 1967.*

---

* Motion for rehearing denied, with costs, on February 27, 1968.

For the appellant there was a brief by *Barbee & Jacobson, Lloyd A. Barbee,* and *Thomas M. Jacobson,* all of Milwaukee, and *Jack Greenberg, Leroy D. Clark,* and *Gabrielle Kirk,* all of New York, N. Y., and oral argument by *Thomas M. Jacobson* and *Lloyd A. Barbee.*

For the respondent there was a brief by *Sheldon D. Frank,* attorney, and *Sidney Gray* of counsel, both of Milwaukee, and oral argument by *Mr. Frank.*

Briefs *amici curiae* were filed by *Goldberg, Previant & Uelmen* of Milwaukee, for the Wisconsin State AFL–CIO, and by *Harry F. Peck, Jr.,* of Milwaukee, for the Wisconsin Civil Liberties Union.

CURRIE, C. J.   Appellant attacks the constitutionality of Wisconsin's garnishment before judgment statutes, secs. 267.02(1) (a) 1, 267.05 (1), 267.07 (1), 267.16 (1), 267.18 (2), and 267.21, Stats., on a number of grounds based on injustices and deprivations which have been, or are likely to be, suffered by others, but which she has not personally experienced.

One such ground is that poor wage earners may have their wages garnished in a situation where there is no

merit to the claim for which the principal action has been instituted. As a result such wage earners either are forced to settle with the plaintiff by assigning future wages, or are deprived of their wages for a long period of time until the principal action can be tried and probable cause determined. Here, appellant's indebtedness is on a note, and her affidavit in support of the order to show cause contains no allegation that she is not indebted thereon to plaintiff.

Another alleged ground of unconstitutionality is that sec. 267.18 (2) (a), Stats.,[1] makes no accommodation for defendants with more than one dependent. However, appellant received the benefit of the maximum subsistence allowance of one half of the amount of her garnished wages, and her affidavit does not allege how many dependents, if any, she has.

Another alleged ground of unconstitutionality is that sec. 267.21, Stats., which permits a defendant to post a bond and secure the release of his garnished property, denies equal protection of the laws to persons of low income. Appellant has made no showing that she is a person of low income and unable to post a bond.

A further alleged ground of unconstitutionality is that the garnishment before judgment statutes threaten the gainful employment of many wage earners. It is claimed that many employers discharge garnished employees for being unreliable. Appellant, however, has made no showing that her own employer reacted in this manner.

---

[1] Sec. 267.18 (2) (a), Stats., provides: "When wages or salary are the subject of garnishment action, the garnishee shall pay over to the principal defendant on the date when such wages or salary would normally be payable a subsistence allowance, out of the wages or salary then owing, in the sum of $25 in the case of an individual without dependents or $40 in the case of an individual with dependents; but in no event in excess of 50% of the wages or salary owing. Said subsistence allowance shall be applied to the first wages or salary earned in the period subject to said garnishment action."

Still a further ground of attack is the provision in sec. 267.07 (1), Stats., which affords ten days' time to plaintiff to serve the garnishee summons and complaint on defendant after service of same on the garnishee. Here, appellant was served on the same day as the garnishee.

It is a long-accepted rule that a party may not urge the unconstitutionality of a statute upon a point not affecting his or her rights.[2] In *State ex rel. Kellogg v. Currens*[3] the challenging party presented 11 grounds of attack upon the constitutionality of a statute. The court discussed the one which affected the challenger but refused to discuss the other ten, stating:

". . . Statutes are not to be declared unconstitutional at the suit of one who is not a sufferer from their unconstitutional provisions. . . . We cannot set aside the acts of the legislature at the suit of one who, suffering no wrong himself, merely assumes to champion the wrongs of others. . . ."[4]

Accordingly we will confine our consideration of appellant's grounds of attack upon the garnishment before judgment statutes to those directly affecting her. The grounds of attack which will thus be considered are:

(1) These statutes deprive appellant of her property without due process of law.

(2) Appellant is denied due process of law, because the statutes afford her no right to an immediate hearing to challenge the validity of the garnishment.

(3) The legislature has assumed judicial powers in violation of art. VII, sec. 2, Wis. Const.

---

[2] *Scharping v. Johnson* (1966), 32 Wis. 2d 383, 395, 145 N. W. 2d 691; *Joint School Dist. v. Boyd* (1955), 270 Wis. 222, 226, 70 N. W. 2d 630; *Milwaukee Boston Store Co. v. American Federation of Hosiery Workers* (1955), 269 Wis. 338, 357, 69 N. W. 2d 762; *Anderson v. State* (1936), 221 Wis. 78, 89, 265 N. W. 210; *State ex rel. Kellogg v. Currens* (1901), 111 Wis. 431, 87 N. W. 561; 16 C. J. S., *Constitutional Law*, p. 226, sec. 76 (a).

[3] *Supra,* footnote 2.

[4] *Id.* at pages 442, 443.

(4) The garnishment before judgment statutes deny appellant equal protection of the laws because they subject wage earners to harsher summary process than other classes of debtors.

### Deprivation of Property Without Due Process.

The garnishment before judgment proceedings do not involve any final determination of the title to a defendant's property, but merely preserve the status quo thereof pending determination of the principal action. The defendant receives notice and a hearing before being permanently deprived of his or her property.

In *McInnes v. McKay* [5] it was contended that Maine's statute, which permitted attachment, without affidavit or bond, in advance of judgment, deprived the defendant of due process of law contrary to the fourteenth amendment of the United States Constitution. The relevant statute provided:

"All civil actions, except scire facias and other special writs shall be commenced by original writs; which, in the Supreme Judicial Court, may be issued by the clerk in term time or vacation, and framed to attach the goods and estate of the defendant, and for want thereof to take the body, or as an original summons, without an order to attach goods and estate." [6]

The court held that this was:

". . . not a deprivation without 'due process of law' for it is part of a process, which during its proceeding gives notice and opportunity for hearing and judgment of some judicial or other authorized tribunal." [7]

It noted that the attachment merely created a temporary lien, which did not destroy the defendant's title.

---

[5] (1928), 127 Me. 110, 141 Atl. 699.

[6] Maine Rev. Stats. 1928, ch. 86, sec. 2.

[7] *Supra,* footnote 5, at page 116.

The court also cited the United States Supreme Court's statement in *Rothschild v. Knight* [8] that to what actions the remedy of attachment may be given is for the legislature of a state to determine and its courts to decide.

*McInnes v. McKay* was affirmed under the title *McKay v. McInnes* by the United States Supreme Court in a per curiam decision [9] on the authority of *Ownbey v. Morgan* [10] and *Coffin Brothers v. Bennett.* [11]

*Ownbey v. Morgan* upheld the constitutionality of Delaware's foreign attachment law as not being a denial of due process even though it harshly provided that before the defendant could appear and defend he had to give security in the amount of the value of the property attached. The court in its opinion declared:

"The due process clause does not impose upon the States a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall. It restrains state action, whether legislative, executive, or judicial, within bounds that are consistent with the fundamentals of individual liberty and private property, including the right to be heard where liberty or property is at stake in judicial proceedings. . . ." [12]

*Coffin Brothers v. Bennett* involved a Georgia statute which authorized the superintendent of banks to issue an execution against the property of a stockholder of a defunct bank and upon whom a stock assessment had been levied. Mr. Justice HOLMES wrote the unanimous opinion for the court and stated:

"The objection urged by the plaintiffs in error seems to be that this section purports to authorize an execution

---

[8] (1902), 184 U. S. 334, 341, 22 Sup. Ct. 391, 46 L. Ed. 573.

[9] (1928), 279 U. S. 820, 49 Sup. Ct. 344, 73 L. Ed. 975.

[10] (1921), 256 U. S. 94, 41 Sup. Ct. 433, 65 L. Ed. 837.

[11] (1928), 277 U. S. 29, 48 Sup. Ct. 422, 72 L. Ed. 768.

[12] *Supra,* footnote 10, at pages 110, 111.

and the creation of a lien at the beginning, before and without any judicial proceeding. But the stockholders are allowed to raise and try every possible defense by an affidavit of illegality, which, as said by the Supreme Court of Georgia, makes the so called execution 'a mode only of commencing against them suits to enforce their statutory liability to depositors.' A reasonable opportunity to be heard and to present the defence is given and if a defence is presented the execution is the result of a trial in Court. The Fourteenth Amendment is not concerned with the form. *Missouri ex rel. Hurwitz v. North,* 271 U. S. 40, 42. The fact that the execution is issued in the first instance by an agent of the State but not from a Court, followed as it is by personal notice and a right to take the case into court, is a familiar method in Georgia and is open to no objection. . . ." [13]

While neither *Ownbey v. Morgan* nor *Coffin Brothers v. Bennett* involved garnishment before judgment statutes, their rationale, when cited by the United States Supreme Court as authority for affirming *McInnes v. McKay* becomes clear. It is that the creditor's remedies involved, though harsh, did not deprive a man of his property without notice and an opportunity to be heard.

The ability to place a lien upon a man's property, such as to temporarily deprive him of its beneficial use, without any judicial determination of probable cause dates back not only to medieval England but also to Roman times. [14] In regard to the constitutional relevance of antiquity, Mr. Justice HOLMES has stated:

"The Fourteenth Amendment, itself a historical product, did not destroy history for the States and substitute mechanical compartments of law all exactly alike. If a thing has been practiced for two hundred years by common consent, it will need a strong case for the Four-

[13] *Supra,* footnote 11, at page 31.
[14] 1 Wade, *Attachment* (1886), pp. 19–22, sec. 1.

teenth Amendment to affect it, as is well illustrated by *Ownbey v. Morgan*, 256 U. S. 94, 104, 112." [15]

We deem a West Virginia decision, which dealt with a before judgment garnishment, to be apposite. In *Byrd v. Rector* [16] the nonresident defendant, who had been garnished before judgment, argued that he had been denied due process because the plaintiff had not been required to post a bond before the garnishment. The court stated:

"We think the answer to these propositions is that a defendant is not deprived of his property by reason of the levy of a copy of the attachment upon a person who is indebted to him or who has effects in his custody belonging to the defendant. The most that such procedure does is to deprive defendant of the possession of his property temporarily by establishing a lien thereon. Whether the defendant shall be deprived of such property must depend of course upon the plaintiff's subsequent ability to obtain a judgment *in personam* or *in rem* on his claim against the defendant. If, after having full opportunity to be heard in defense of such claim, a judgment is rendered thereon against the defendant or his property, there has been no lack of due process. In the meantime there has been no deprivation of property. The attachment, *quasi rem* in nature, has operated only to detain the property temporarily, to await final judgment on the merit's [sic] of plaintiff's claim. No constitutional right is impaired. *McInnes v. McKay*, (Me.) 141 Atl. 699. Until such judgment is obtained, the defendant's property in the hands of a garnishee is immune from the plaintiff's grasp. Under no circumstances could it be converted into cash and applied on the plaintiff's demand prior to final adjudication of the merits of the controversy

---

[15] *Jackman v. Rosenbaum Co.* (1922), 260 U. S. 22, 31, 43 Sup. Ct. 9, 67 L. Ed. 107. *See also Frank v. Maryland* (1959), 359 U. S. 360, 370, 79 Sup. Ct. 804, 3 L. Ed. 2d 877, in which Mr. Justice FRANKFURTER cites *Jackman* and *Ownbey* as to the legal significance of a long and consistent history of state practice.

[16] (1932), 112 W. Va. 192, 163 S. E. 845.

between plaintiff and defendant. Now, if pending such determination, the defendant is inconvenienced because he is temporarily deprived of the possession and use of his property in the hands of the garnishee, the defendant may acquire possession by giving bond, for which provision is made by Official Code, 38–7–20. We find no error under this point." [17]

In view of the aforecited authorities, we determine that Wisconsin's garnishment before judgment statutes do not deprive appellant of her property without due process of law.

### Failure of Garnishment Statutes to Afford Appellant an Immediate Hearing.

Sec. 267.16 (1), Stats., provides:

"No trial shall be had of the garnishment action until the plaintiff has judgment in the principal action and if the defendant has judgment the garnishment action shall be dismissed with costs."

Appellant contends that the failure of the garnishment statutes to afford her an immediate hearing on the propriety of the garnishment constitutes a denial of due process.

However, despite the fact that the garnishment statutes do not grant to appellant the right of judicial review of the propriety of the garnishment action prior to trial of the principal action, Wisconsin case law establishes that she can obtain such judicial review.

In *Orton v. Noonan* [18] the court stated in regard to garnishment before judgment:

". . . the court, without the aid of any express statutory provision, has a general power to control and regu-

---

[17] *Id.* at page 198. *See also* 16 Am. Jur. 2d, *Constitutional Law,* p. 980, sec. 576.

[18] (1871), 27 Wis. 572.

late the proceeding upon summary process of this nature, so as to correct or prevent any abuse or misuse of such process, and that the defendant may, in some proper form, contest the truth of the grounds alleged by the plaintiff for obtaining it." [19]

Thus the court's power to control its process is inherent and requires no statutory authorization.

This court in *Chernin v. International Oil Co.*[20] reaffirmed the right of a defendant to move to quash or dismiss the garnishment action to the point of a judicial ascertainment that a good-faith controversy exists. The procedure approved therein was a motion for summary judgment dismissing the garnishment action on the ground that the complaint in the principal action failed to state a cause of action "for damages founded upon contract" as required by then sec. 267.01 (3), Stats. Such requirement is now to be found in present sec. 267.02 (1) (a).

Thus potential abuses of garnishment before judgment are subject to judicial review before trial of the principal action. Moreover, a garnishment without probable cause can be the basis of a suit for malicious prosecution.[21] We, therefore, find no denial of due process in the failure of the garnishment statutes to contain a provision for judicial review of the propriety of a garnishment action prior to trial of the principal action, inasmuch as such right exists independently of statute.

*Assumption of Judicial Powers.*

Sec. 267.04, Stats., provides in part as follows:

"(1)    Upon payment to the clerk of court of a clerk's fee of $2 and a suit tax of $1, the clerk shall issue a garnishee summons . . .

---

[19] *Id.* at page 579.
[20] (1952), 261 Wis. 308, 52 N. W. 2d 785.
[21] *Novick v. Becker* (1958), 4 Wis. 2d 432, 90 N. W. 2d 620.

"(2) The garnishee summons shall be substantially in the following form:

"...

"You are ordered to retain such property [belonging to the defendant] and make no payment, except for subsistence allowance if any, to the principal defendant pending the further order of the court.

"...

"(3) A garnishment action shall be commenced by the service of a garnishee summons and annexed verified complaint."

In regard to the complaint, sec. 267.05 (1), Stats., provides:

"The garnishee complaint in a garnishment action before judgment must allege the existence of one of the grounds for garnishment mentioned in s. 267.02 (1) (a), the amount of the plaintiff's claim against the defendant, above all offsets, known to the plaintiff, and that plaintiff believes that the named garnishee is indebted to or has property in his possession or under his control belonging to the defendant (naming him) and that such indebtedness or property is, to the best of plaintiff's knowledge and belief, not exempt from execution."

The plaintiff must file with or mail to the clerk of court a copy of both the garnishee summons and complaint before serving the garnishee-defendant.[22] We deem a more accurate statement of appellant's position to be that the legislature has attempted to unconstitutionally vest judicial powers in an administrative officer.

This court in 1927 in *State v. Van Brocklin* [23] upheld the constitutionality of a state statute which conferred power on a clerk of court to issue a search warrant upon determining probable cause against the contention that this violated art. VII, sec. 2, Wis. Const. The court quoted with approval from the Alabama case of *Kreulhaus v. Birmingham* [24] as follows:

[22] Sec. 267.10, Stats.
[23] (1927), 194 Wis. 441, 217 N. W. 277.
[24] (1909), 164 Ala. 623, 51 So. 297.

" '. . . it was not the intention of the framers of the Constitution to deny to the Legislature the power to confide to ministerial officers, who do not constitute a part of the judiciary, properly so called, many duties involving inquiries in their nature judicial.' " [25]

While some members of this court question some of the reasoning employed by the court to reach the result in *State v. Van Brocklin,* we approve of the holding that some duties involving inquiries judicial in their nature may be delegated to administrative officers where the acts of such officers are later subject to judicial review.

In *Central Loan & Trust Co. v. Campbell* [26] the United States Supreme Court considered the argument that a territorial statute of Oklahoma was void, because it allowed a probate judge to issue a writ of attachment, while the organic act of the territory vested all common law jurisdiction in the Supreme Court and District Courts of Oklahoma. The court rejected this argument, and stated:

"On the face of the Oklahoma statute it is apparent that it is required as a prerequisite to the issuance of an attachment that the affidavit, in support thereof, shall simply state the particular ground for attachment mentioned in the act, and therefore that the granting of an order for attachment does not involve the discharge of a judicial function, but merely the performance of a ministerial duty, that is, the comparison of the language of the affidavit with the terms of the statute . . . It is elementary that where the ground of attachment may be alleged in the language of the statute, the authority to allow the writ need not be exercised by the judge of the court, but may be delegated by the legislature to an official, such as the clerk of the court." [27]

As appears from the prior quotation herein from *Coffin Brothers v. Bennett* [28] the United States Supreme

[25] *Id.* at page 629.
[26] (1899), 173 U. S. 84, 19 Sup. Ct. 346, 43 L. Ed. 623.
[27] *Id.* at pages 95, 96.
[28] *Supra,* footnote 11.

Court also found unobjectionable the fact that the execution had been issued by the state superintendent of banks instead of a court. However, the court was there concerned with the due process clause of the fourteenth amendment rather than the issue of unconstitutional delegation of judicial power contrary to a state constitution.

We find no merit to appellant's contention that sec. 267.04, Stats., violates art. VII, sec. 2, Wis. Const.

### Denial of Equal Protection of the Laws.

Appellant's brief asserts that the garnishment before judgment statutes subject wage earners to harsher summary process than other classes of debtors. However, any debtor, wage earner or not, is subject to these statutes. For example, bank accounts of businessmen and corporations are subject to garnishment before judgment. It may be argued generally that the effect of garnishment before judgment is harsher on wage earners than other classes of debtors. However, appellant has not set forth how these statutes, as applied to her own particular situation, have denied her equal protection of the laws. We decline to consider this argument of denial of equal protection in the absence of facts substantiating such contention.

### Pending Legislation.

This court is fully cognizant of the fact that many undue hardships have resulted from the operation of Wisconsin's before judgment garnishment statutes in the cases where wages and salaries of employees have been garnisheed. We are pleased that there is pending before the present legislature legislation that will remedy these abuses.

On November 14, 1967, the assembly passed by a vote of 89 to five Substitute Amendment No. 1, to Bill No. 454,

which bars garnishment before judgment of the wages or salary of the principal defendant. The state senate now has this measure before it.

*By the Court.*—Order affirmed.

HEFFERNAN, J. (*dissenting*). The majority opinion would lead one to believe that garnishment before judgment is a venerable practice of Anglo-Saxon jurisprudence and should be accorded the imprimatur of time. Yet, the fact of the matter is that this is a rather new development in Wisconsin law. The excellent brochure written by Paul L. Moskowitz for the Wisconsin Extension Law Department states:

"Chapter 267 of the Wisconsin Statutes' (1959) comes from R.S. 1878, Section 2752. The statute in Wisconsin originally provided garnishment as a remedy in aid of execution only. Many states still follow this law." 1962 Wisconsin Lawyers' Seminars, Wisconsin Garnishment and Exemptions, p. 1.

Garnishment is strictly a statutory remedy. *Markman v. Becker* (1959), 6 Wis. 2d 438, 95 N. W. 2d 233. Thus, it is apparent that it is no great sacred bastion of the common law that is under assault in this case. The only question is whether legislative action has deprived the defendant and others similarly situated of their constitutional rights.

The majority concludes that the garnishment statute does not result in a deprivation of property. The rationale behind this is embodied in the majority's quotation from *Byrd v. Rector* (1932), 112 W. Va. 192, 163 S. E. 845. The essence of that quotation is that there is no deprivation of the defendant's property because the procedure places the defendant's property in the hands of the law and not in the hands of the plaintiff until after judgment.

It strikes me that this reasoning is most unrealistic. The constitutional question is not whether defendant has

lost his title to the property, nor whether another has gained its beneficial use. The test is whether *he* was deprived of his property. In the instant case no legal fiction can disguise the fact that, from the time of the service of the garnishee summons until the lien of that process is released, the defendant is unable to make any beneficial use of his wages other than the pittance which may be available to him either as an exemption or subsistence allowance. Moreover, the case of *Byrd v. Rector* is only of strained applicability in the present case. In that case an infant plaintiff, who had been injured by the explosion of a dynamite cap which had been negligently disposed of by a nonresident defendant, commenced a suit in tort for his personal injury. Accordingly, an *attachment* was issued on the ground that the defendant was a nonresident. The *Byrd Case* furnishes a sound rationale in support of our attachment laws, and where the plaintiff's attack on the attachment procedures, ch. 266 of the Wisconsin statutes, the citation would be more appropriate. Chapter 266 recognizes that attachment is an unusual remedy—to be resorted to only in special circumstances. It is designed to protect state residents from creditors whose conduct amounts to fraud or from foreign creditors who have assets within the state. The *Byrd Case* situation is clearly contemplated by sec. 266.03 (2) (a):

"(2)  TORT ACTION. In tort actions the affidavit shall state that a cause of action in tort exists in favor of the plaintiff and against the defendant, that the damages sustained exceed fifty dollars specifying the amount claimed and either:
"(a)  That the defendant is not a resident of this state . . . ."

The case of *Ownbey v. Morgan* (1921), 256 U. S. 94, 109, 41 Sup. Ct. 433, 65 L. Ed. 837, points out that the attachment of the goods of a foreigner is to be treated uniquely and is dependent in part on the duty of a state

to protect its own citizens in their claims against non-resident owners of property situate within the state. The *Ownbey Case* uses a rather quaint, archaic, and unacceptable rationale in concluding that there is no denial of due process when a debtor's property is detained, stating:

"[A] man who has property usually has friends and credit—and hence in its normal operation it must be regarded as a permissible condition; and it cannot be deemed so arbitrary as to render the procedure inconsistent with due process of law . . . ." (p. 111.)

This same case stressed the origins of the attachment procedure and pointed out that its purpose was to distrain the defendant's property to assure the appearance of the defendant so that there could be a procedure in personam against him. It is clear that *Ownbey v. Morgan* has little relevance to the Wisconsin law which permits the garnishment of wages of Wisconsin residents.

While *McKay v. McInnes* (1928), 279 U. S. 820, 49 Sup. Ct. 344, 73 L. Ed. 975, is relied upon by the majority, it appears that the United States Supreme Court without opinion merely affirmed the Maine court on the basis of *Ownbey v. Morgan, supra,* and *Coffin Brothers v. Bennett* (1928), 277 U. S. 29, 48 Sup. Ct. 422, 72 L. Ed. 768. As pointed out above, *Ownbey* is not applicable to this case. The *Coffin Brothers* opinion is a rather cursory one by Mr. Justice HOLMES in which he justifies his conclusion on the basis that it is a "familiar method in Georgia." This is hardly a persuasive rationale; and as pointed out above, it is specious reasoning to conclude that, because a debtor has a chance to be heard on the question of whether or not his property should be returned to him, he has not been deprived of his property in the interim. Moreover, Mr. Justice HOLMES points out that the defendants "are allowed to raise and try *every possible* defense by an affidavit of illegality." (Emphasis supplied.) The Wisconsin statute provides for no

such comprehensive mode of defense available at the inception of the suit.

While some of the reasoning in these cases is appropriate to the garnishment of property, it has little or no relevance to the garnishment of wages. The garnishment of wages is uniquely a product of the accrual bookkeeping system which has only come to fruition in the twentieth century. Until recently, laborers were paid by the day and not by the week or month. Hence, the law of garnishment in terms of historical precedent arose out of the garnishment of property other than wages. There is little pertinence in the majority's statement that the right to place a lien upon a man's property dates back to medieval England and Roman times. Accrued wages, in terms of the history of the law, are a new property right and should be treated by the law with that distinction in mind.

It should also be noted that until recently wages were totally exempt from garnishment. Rood, *Garnishment* (West's, 1896), p. 119, sec. 87, states the policy of the wage exemptions that was nearly universal until near the end of the nineteenth century:

"The policy of the law—the intent of the legislature in enacting these provisions—is too plain for argument. It was to secure to those who toil with their hands, or depend for their subsistence upon their personal earnings, a sufficient amount of the fruits of their labor to supply them and their families with the necessities of life and a few of the conveniences of modern civilization, free from the merciless grasp of their less needy creditors."

It was not until the enactment of ch. 141 of the Laws of Wisconsin (1883) that the exemption for wages was in part abandoned.[1]

---

[1] An earlier enactment, ch. 317, Laws of Wisconsin (1882), provided for an exemption of all wages for three months prior to the garnishment.

I would concede that it is not unconstitutional to deprive a defendant of his property, including wages, by garnishment and to hold it in *custodia legis* for a limited period of time so that the creditor can be certain that the assets are there to satisfy its judgment when once obtained. Under the Wisconsin statutes, however, the plaintiff need not serve his summons on the defendant until ten days after he has served the garnishee. This is a clear denial of due process, for the wages of the defendant are distrained without the necessity of notice to their equitable owner. As the majority opinion clearly points out, however, there is no allegation that this particular denial of justice took place in the instant case. It should be noted, however, that the very case relied upon by the court, *Ownbey v. Morgan, supra,* page 103, states that, in determining whether there is a denial of due process, the court is not confined to the particular case at hand but is to make its determination ". . . with respect to the general effect and operation of the system of procedure established by the statutes." While *Ownbey* takes the position that the unusual case of hardship should be overlooked in favor of the general statutory scheme, it is obvious that the converse reasoning is equally applicable.

The defendant complains, however, that even though the notice is given simultaneously, *i.e.,* by a concurrent service on both the principal defendant and the garnishee, nevertheless, the property is withheld unconscionably until there has been a trial of the principal action. The majority dismisses this contention by stating that it is in the inherent power of a court to prevent any abuse or misuse of the process and that the defendant may, as said in *Orton v. Noonan, infra,* "in some proper form" contest the truth of the grounds alleged by the plaintiff.

This court has defined that right to contest the plaintiff's use of process in *Chernin v. International Oil Co.* (1952), 261 Wis. 308, 52 N. W. 2d 785, and it is apparent that the defendant's rights are in fact limited to the determination of whether a good-faith controversy exists.

*Orton v. Noonan* (1871), 27 Wis. 572, quoted by the majority, makes it clear that all the plaintiff has to do to satisfy this requirement is the making and filing of an affidavit of indebtedness to the plaintiff. And *Chernin v. International Oil Co.* merely determined that where the complaint in the principal action alleges a cause of action for damages for breach of contract the garnishment action will not be dismissed.

Under the state of law as it now stands, unless the plaintiff's complaint is demurrable or on its face fraudulent there is no relief available to the defendant short of the trial of the principal action. There is no statutory or common law procedure whereby the defendant can in a timely or summary fashion "raise . . . every possible defense by an affidavit of illegality," as described in *Coffin Brothers v. Bennett, supra.* The right to a prompt and summary defense on the merits that Mr. Justice HOLMES found as a saving grace in *Coffin* is fatally absent in the instant case.

Nor do I consider the possibility of a malicious prosecution action to be much solace to a wage owner who has been oppressed by an improper garnishment procedure action. If he has the resources to commence a retaliatory action for damages, he most likely would have been able to successfully defend himself in a garnishment action. The majority reasoning is similar to that of *Ownbey* where the United States Supreme Court concluded that the defendant's property would not have been seized if he were not a man of property and, hence, he should be able to take care of himself. The circuity of the court's reasoning is not acceptable to me.

I conclude that a major constitutional defect of the statute is its failure to provide for a mandatory trial on the merits within a limited and statutorily defined time following the seizure of the defendant's wages.

I am in agreement with the majority's point that the issuance of a garnishee summons by the clerk of court does not constitute the usurpation of judicial power. I

am, however, in complete disagreement with the rationale by which it arrives at that conclusion. Its conclusion is supported by the reliance on two discredited cases. The first of these is *State v. Van Brocklin* (1927), 194 Wis. 441, 217 N. W. 277. In this case the question was whether a statute which permitted the clerk of the Winnebago county court to issue a search warrant constituted the proper exercise of judicial power. The court in *Van Brocklin* found an implied authorization for such delegation of power in art. VII, sec. 23 of the Constitution, which manifestly was designed to provide for the appointment of court commissioners exercising the power of a judge in chambers. The court concluded that if the legislature had that power it undoubtedly had the residual power to authorize clerks of municipal courts to issue criminal warrants. It is submitted that this hardly follows. At any rate this court has subsequently, in *State ex rel. White v. Simpson* (1965), 28 Wis. 2d 590, 137 N. W. 2d 391, clearly ruled that only a magistrate exercising judicial power is authorized to issue a warrant, making it clear that the question of probable cause is not to be left to an administrative officer. *Giordenello v. United States* (1958), 357 U. S. 480, 486, 78 Sup. Ct. 1245, 2 L. Ed. 2d 1503, used the language, "The Commissioner must *judge* for himself the . . . facts . . . to show probable cause." (Emphasis supplied.) The other case relied upon by the majority, *Kreulhaus v. Birmingham* (1909), 164 Ala. 623, 51 So. 297, held that the statute that permitted a clerk to issue warrants of arrest did not confer any judicial power. The rationale of the Alabama court was:

"The statute in this case conferred no power upon the clerk to finally hear and determine, nor even to commit to bail, but only to issue warrants, which must be construed to authorize him to issue warrants on probable cause . . . ." (pp. 629, 630.)

It is obvious that following the *White v. Simpson* rationale, this case is equally repugnant to our now accepted standards of due process.

I agree with the court's rationale that the only determination required of the clerk is a ministerial one, that is, it is only necessary for the plaintiff to set forth in the language of the statute the basis upon which the summons is requested. This is not a determination of probable cause. It is not a judicial function and is not constitutionally prohibited. I object, however, to the majority's failure to rest their position upon this perfectly good argument. Instead they have chosen to shore up this rationale with outworn precedents of extremely dubious authority, and by so doing have put the ruling of *White v. Simpson* in jeopardy.

In view of my views set forth above, I must respectfully dissent from the court's opinion. I am convinced that the plaintiff has established that she is personally aggrieved to the extent that she may properly raise at least some of the constitutional issues which she presses. Since I find her complaint has validity as set forth above, I would hold the garnishment statute unconstitutional in that it deprives the defendant of property—wages—without due process of law—in that she lacks any method of insuring a reasonably prompt adjudication of her rights and the return of her property. I also dissent because the majority opinion has failed to state adequately what I conceive to be its true position—that the affirmance of the trial court results not from a conviction that the trial court is correct on the constitutional question, but rather on the fact that this particular plaintiff has not been aggrieved. The court was no doubt influenced by the legislative progress of the bill that would end the garnishment of wages prior to judgment. There is an understandable willingness to "let sleeping dogs lie" when there exists the strong possibility that the legislature will shortly correct this harsh and unconstitutional legislation. I

believe, however, that this court would be remiss in its constitutional duties if it did not hold a statute unconstitutional if in fact it appears to be so, even though the legislature is about to fashion a correction. Since I believe the statute to be in part unconstitutional, I would reverse.

I am authorized to state that Mr. Justice WILKIE joins me in this dissent.