GEROVAC, Plaintiff and Appellant, v. HRIBAR TRUCKING, INC., Defendant and Respondent: TRAVELERS INSURANCE COMPANY and another, Garnishee Defendants and Respondents.

*No. 316. Argued June 3, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 863.)

For the appellant there was a brief by *Eisenberg, Kletzke & Eisenberg,* attorneys, and *Jerome F. Pogodzin-*

*ski* of counsel, all of Milwaukee, and oral argument by *Mr. Pogodzinski.*

For the defendant-respondent there was a brief by *Gerald T. Flynn,* attorney, and *Weber, Gerard & Bonk* of counsel, all of Racine, and oral argument by *Myron L. Bonk.*

ROBERT W. HANSEN, J.  A rose by any other name smells as sweet, which is because nothing about the rose has been changed except the name given to it. We have here a principal action begun as an action in tort and is now claimed to be an action on contract. But is it?

The fact situation in plaintiff's complaint is alleged to be:

. . . that the plaintiff, Emil Gerovac, is a masonry and general contractor.

. . . that the defendant, Hribar Trucking, Inc., is a trucking company, a Wisconsin corporation.

. . . that the plaintiff was hired in April, 1960, to perform services as a contractor at a gravel pit in Waukesha county by the Root River Sand & Gravel Company, a Wisconsin corporation.

. . . that the nature of the contract required plaintiff to supply equipment for the performance of the contract.

. . . that the defendant, Hribar Trucking, Inc., was also employed by Root River Sand & Gravel Company.

. . . that after the termination of plaintiff's work at the gravel pit plaintiff was given permission to store his tools in the barn and shed of Root River Gravel & Sand Company.

. . . that plaintiff did in fact store his tools at the barn and shed from June, 1960, until September, 1964.

. . . that defendant Hribar Trucking, Inc., on or about the month of September, 1964, was taking the plaintiff's tools out of the barn and shed, and removing them from the property in the ordinary course of their business.

. . . that during the period from September, 1964, to October, 1966, Hribar Trucking, Inc., did in fact remove

all said tools and equipment and "said removal was done maliciously and deliberately and was intended to injure plaintiff."

. . . that the value of said equipment is $10,849.78.

. . . that in October, 1966, plaintiff discovered that the equipment was being used by Hribar Trucking, Inc.

. . . that plaintiff informed the president of Hribar Trucking, Inc., that if said corporation were to retain the equipment it would have to pay plaintiff $10,849.78.

. . . that Hribar Trucking, Inc., did retain the equipment.

On this set of allegations plaintiff sued the defendant corporation, Hribar Trucking, Inc., in tort. Obviously, the tort action was founded on the claim of conversion or unauthorized use, and the damages sought represented the value the plaintiff placed on the stored equipment.

Along with the principal action came three successive garnishment actions. Two were dismissed. This is the third. All three garnishment actions were issued as ancillary to the principal action against Hribar Trucking, Inc. Before the third garnishment action was commenced, an amended complaint was served and filed.

It sought to change the nature of the principal action from tort to contract by alleging ". . . that the aforementioned transaction constituted an implied contract since the consideration for the contract passed from the plaintiff to the defendant, the value aforementioned was never contested and the supplies and equipment were never returned to the plaintiff and, in fact, was used by the defendant in its ordinary course of business. . ." and ". . . that the plaintiff concluded that in truth and fact it participated in an implied contract where the defendant knew the price if the property was retained, retained the property but never paid the price . . . ."

In dismissing the third garnishment action, this one based upon the amended complaint, the trial court ruled that garnishment did not lie because an "identical garnishment" had been earlier "dismissed by this court"

and for the reason that the action is "based on an unliquidated claim." The second point is not well taken. If an action is founded on contract, it is not necessary that damages be liquidated.[1] There remains the question of whether the additional allegations added to the original complaint succeeded in changing the nature of the action from one founded on tort to one based on contract.

A careful reading of the entire amended complaint compels the conclusion that it falls short of accomplishing the conversion of the tort action based upon conversion to a contract action based on implied contract. It purports to allege a consensual agreement between the parties. It is true that there are circumstances where a case may be brought either on the theory of tort or contract liability. It is likewise true that a contract implied in fact may arise from an agreement circumstantially proved. But even an implied contract must be one which arises under circumstances which, according to ordinary course of dealing and common understanding of men, show a mutual intention to contract.[2] Here plaintiff alleges only that "Plaintiff concluded in truth and fact it participated in an implied contract." That is not the test. The test is whether, accepting the complaint on its face, is there alleged a mutual intention of the parties to contract. The setting of a figure that will be accepted as damages in a tort action does not, standing alone, form a basis for a claim of a contractual relationship.

Not only is too little added, but too much is retained of the original tort complaint to effectuate the purpose of changing its nature from tort to contract. Kept in the complaint is the allegation that "said removal [of the equipment] was done maliciously and deliberately and

---

[1] See *Kindinger v. Behnke* (1912), 150 Wis. 557, 137 N. W. 777; *Barber v. Walker* (1870), 26 Wis. 44.

[2] *In re Munro's Estate* (1941), 296 Mich. 80, 295 N. W. 567, 570, cited and quoted in 20 Words and Phrases, p. 345.

was intended to injure plaintiff." This continues the claim of injury by conversion; in fact claims deliberate and malicious conversion. It negatives the claim of contract, even an implied or quasi contract. "What you are speaks so loud I cannot hear what you say" said Ralph Waldo Emerson. What this complaint actually is—an action sounding in tort—speaks so loudly that one finds the label given it to be neither convincing nor controlling.

What we have here is no more than a claim that $10,849.78 is owing for an act of conversion. The action remains a tort claim based on a claim of conversion of property. Not only was an action founded on tort initially commenced, but two ancillary garnishment proceedings were started as part of the carrying on of the tort suit. Only after both had been dismissed, was the theory of the case sought to be shifted. Then a third garnishment action was begun. We agree that the third garnishment action is an identical proceeding and, more to the point, it is based on a near-identical cause of action with the label but not the substance of the claim altered. While there is broad leeway in election between alternative theories and bases for claims of liability, to permit what was attempted here would be an abuse of process. The circuit court acted to prevent such abuse of its process and we hold that it had the right so to do.[3]

The juxtaposition in time between the amending of the complaint and the sequence of garnishment actions is a factor not entirely irrelevant. The possible application of the case of *Sniadach v. Family Finance Corp.*[4] to garnishment proceedings not involving wages or salaries was not raised, argued or briefed on this appeal. We

---

[3] *Orton v. Noonan* (1871), 27 Wis. 572.

[4] (1969), 395 U. S. 337, 89 Sup. Ct. 1820, 23 L. Ed. 2d 349, reversing *Family Finance Corp. v. Sniadach* (1967), 37 Wis. 2d 163, 154 N. W. 2d 259.

need not and we do not reach the question of whether that decision strikes down garnishment actions of the type here involved as well as proceedings where wages or salaries are the subject of garnishment action.[5] It is enough here to observe that the tide does not run in the direction of liberal construction of garnishment statutes of any nature, nor in the direction of permitting procedural moves or tailoring of pleading to sustain otherwise invalid garnishment proceedings.

*By the Court.*—Order affirmed.

---

[5] For the writer, not the court, it is suggested that the majority opinion in *Sniadach* written by Mr. Justice DOUGLAS, makes clear that it deals with ". . . wages—a specialized type of property presenting distinct problems in our economic system." Emphasis is on ". . . tremendous hardship on wage earners with families to support." Additionally, emphasis is given the fact that ". . . no situation requiring special protection to a state or creditor interest is presented by the facts . . ." Mr. Justice HARLAN, in his concurring opinion, places less emphasis upon the inherent hardship concept, and finds the requirements of "notice" and "hearing" not satisfied by the Wisconsin law. "Apart from special situations . . ." Mr. Justice HARLAN would hold due process is afforded only ". . . by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property or its unrestricted use." The writer, for himself only, concludes that the garnishment action here involved might survive the majority decision, but would be torpedoed by the logic of the concurring opinion.