## James M. Dempsey *v.* John J. Tynan, Commissioner of Motor Vehicles

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Daly, Js.

Argued January 5—decided February 10, 1956

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellant-appellee (defendant).

No appearance for the appellant-appellee (plaintiff).

BALDWIN, J. The plaintiff appealed to the Court of Common Pleas, under § 1048c of the 1953 Cumulative Supplement to the General Statutes, from the suspension of his license and motor vehicle registration by the commissioner of motor vehicles. The court sustained his appeal and ordered judgment entered vacating the suspension. The commissioner has appealed from this judgment. The case concerns

the interpretation and application by the commissioner of the so-called financial responsibility provisions of the motor vehicle law. Cum. Sup. 1953, §§ 1047c-1069c.

The facts are not in dispute. The plaintiff was not insured with respect to his car against liability for personal injury or property damage, he was not exempt under § 1053c from the requirements as to security and suspension, and he had not been required to furnish proof of financial responsibility under § 1044c. On July 28, 1954, while he was operating his automobile, he was involved in an accident in which Michael Durkin, a pedestrian, was injured. Durkin sued the plaintiff for negligence and claimed $20,000 damages in an action returnable to the Superior Court in Hartford County in October, 1954. He caused an attachment to be made on real estate owned by the plaintiff and his wife jointly, with right of survivorship. This property had a market value of $6500 and was subject to a mortgage for $4175. The pleadings in the case have been closed and it is now awaiting trial.

On October 25, 1954, the commissioner, pursuant to § 1051c, requested the plaintiff to deposit $800 in cash or its equivalent as security for Durkin's claim for injuries or suffer the suspension of his motor vehicle registration and operator's license. The plaintiff failed to comply, and the suspension became effective. Thereupon the plaintiff asked for and was given a hearing by a duly authorized representative of the commissioner. § 1048c. At the hearing the plaintiff claimed that the attachment on his real estate was sufficient to satisfy any judgment which Durkin might recover, at least to the extent of $800, and that the commissioner should accept evidence of the attachment as the security re-

quired by him. The plaintiff presently earns $73 a week, and he could increase his income to $5000 a year by selling insurance if he could have the use of his automobile. He makes no claim that the amount fixed by the commissioner, $800, is excessive. The commissioner refused to accept evidence of the attachment as security unless the plaintiff could secure from Durkin or his attorney an affidavit to the effect that the attachment was satisfactory and that Durkin did not desire additional security.

The trial court reached the following conclusions: (1) The commissioner must consider the attachment on real estate as security in the amount represented by the equity in the real estate; (2) he could not refuse to accept evidence of an attachment on real estate as a deposit; (3) in so refusing, he had acted illegally, arbitrarily and in abuse of his discretion. The certificate of registration and operator's license of the plaintiff were ordered to be returned to him. These rulings furnish the basis of the commissioner's appeal. The plaintiff claimed that the statutes under which the commissioner purported to act were unconstitutional. The court overruled this claim, and the plaintiff filed a cross appeal. He has, however, failed to appear and urge his cross appeal either in argument or brief. We will therefore consider it as having been abandoned.

This is the first case in this court in which the powers of the motor vehicles commissioner under the financial responsibility statutes have been directly questioned. We shall consider first the nature of this proceeding. The commissioner is an administrative officer to whom the legislature has given the power to administer this law. § 1048c. He is specifically authorized to give a hearing upon the request of any person claiming to have been aggrieved by

his action, and his acts and orders are subject to review upon appeal to the Court of Common Pleas. Ibid. The court may decide, as it did in this case, that the appeal should operate as a stay of the suspension.

Section 1048c states: "The court may, in disposing of the issue before it, modify, affirm or reverse the order . . . of the commissioner in whole or in part." This means no more than that the court may decide whether the commissioner, upon the facts before him, has mistaken the law, and so has acted illegally, or whether he has been arbitrary to the extent of abusing his discretion. *Gibson* v. *Connecticut Medical Examining Board,* 141 Conn. 218, 222, 104 A.2d 890; *Lanyon* v. *Administrator,* 139 Conn. 20, 28, 89 A.2d 558; *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 548, 12 A.2d 775; *Charchenko* v. *Kelley,* 140 Conn. 210, 213, 98 A.2d 915; *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 545, 102 A.2d 366. A court cannot, constitutionally, do more. *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 583, 37 A. 1080; *DeMond* v. *Liquor Control Commission,* 129 Conn. 642, 645, 30 A.2d 547; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353, 64 A.2d 330. When no record of the proceedings before the commissioner is available, or when the record is inadequate, the court determines the facts upon the assumption that they were the facts upon which the commissioner acted and applies the test hereinbefore stated. *Colonial Beacon Oil Co.* v. *Zoning Board of Appeals,* 128 Conn. 351, 354, 23 A.2d 151; *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 182, 15 A.2d 17.

The purpose of the law requiring the registration of motor vehicles is identification and revenue. *Gonchar* v. *Kelson,* 114 Conn. 262, 264, 158 A. 545,

and cases cited. An operator's license is purely a personal privilege issued by the state on account of fitness. *Shea* v. *Corbett*, 97 Conn. 141, 145, 115 A. 694. Section 1042c confers upon the commissioner the power to suspend or revoke any operator's license or certificate of registration issued under the laws of this state "for any cause that he may deem sufficient." Whenever a motor vehicle is involved in an accident in this state which results in the death or physical injury of any person, or in damage to any property in excess of $100, the operator of the vehicle must file a written report with the commissioner upon a form provided by him. §§ 1040c, 1050c. After the receipt of this report, the commissioner may proceed under § 1051c, which comprehends the situation presented by the case at bar. It is unnecessary to incorporate this long section in our opinion or to attempt to paraphrase its many provisions. It suffices to state that the section empowers the commissioner to determine what amount of security is required to satisfy any judgment which may be obtained for damages against the owner or the operator of the motor vehicle involved. It directs him to suspend the registration of the vehicle and the license of the operator unless the owner or the operator or both shall deposit with him security in the amount determined by him. The provisions of § 1051c do not apply if the owner or the operator of the automobile is insured for liability as detailed in subsection (c), or has qualified as a self-insurer under § 1065c, or is exempt from the necessity of providing security under § 1053c. Section 1056c specifically provides: "The security required . . . shall be in such form and in such amount as the commissioner may require, but in no case in excess of the amount specified in § 1044c" ($20,000

for personal injuries and $1000 for property damage, subject to exceptions not applicable in the instant case). The security deposited must be placed by the commissioner in the custody of the state treasurer. § 1057c.

It appears from the court's finding that the commissioner would have accepted as security in the amount of $800 any one of the following: (a) a cash deposit; (b) a surety company bond; (c) a mortgage on real estate with proof that the equity mortgaged was at least equal to the amount of the security requested; and (d) evidence of the attachment, if proof was submitted that the equity attached was at least equal to the amount of security required and if Durkin filed an affidavit that he was satisfied with the attachment and desired no further security. The commissioner was clearly authorized to propose and to accept either (a), (b) or (c). The basis of the court's decision was that his refusal to accept evidence of the attachment as security without the approval of Durkin was illegal, arbitrary and in abuse of his discretion.

The purpose of the legislature in enacting the financial responsibility provisions of the motor vehicle law was to keep off our highways the financially irresponsible owner or operator of an automobile who cannot respond in damages for the injuries he may inflict, and to require him, as a condition for securing or retaining a registration or an operator's license, to furnish adequate means of satisfying possible claims against him. It is remedial legislation and must be given a construction sufficiently liberal to accomplish its purpose. *Derench* v. *Administrator*, 141 Conn. 321, 324, 106 A.2d 150. The language of § 1051c, when read with § 1056c, expresses the intent that the commis-

sioner shall determine not only the amount of the security as measured in dollars but also its nature. It implies that he may require no security at all if, upon the facts presented in the accident report or at a hearing upon the suspension as provided in § 1048c, it should appear that none is necessary for the reasonable protection of the injured person. Section 1051c is silent as to the nature of the security which the commissioner may demand. However, § 1045c, though applicable only on general grounds to this particular case, states that proof of financial responsibility satisfactory to the commissioner "may be" evidence of insurance, a bond of a surety company or of an individual surety owning real estate, or the deposit of cash or collateral. The provisions of this section do not exclude other forms of security "satisfactory to the commissioner." The statutes lay down a standard of guidance but leave the final decision to the commissioner's honest, fair and intelligent judgment.

The commissioner argues that the only "security" which he can accept must be of such a nature that it can be deposited with the state treasurer and by him applied to the payment of a judgment. § 1057c. So far as requiring "security" is concerned, this is a proper interpretation of his powers. Section 1069c, however, states that nothing in the law "shall be construed as preventing the plaintiff in any action at law from relying for relief upon any other process provided by law." This means that a plaintiff who is bringing, or has brought, an action for damages arising out of the operation of an automobile need not depend entirely upon such "security" as the commissioner may require to satisfy any judgment. He may proceed by the process of attachment upon any property belonging to the owner or the operator

of the automobile and levy upon it after final judgment. Under such circumstances, the commissioner is bound to consider this attachment in determining what, if any, "security" may be required. Exercising the powers conferred by § 1051c, he may determine that under all the circumstances the attachment provides adequate guarantee for the satisfaction of any judgment and that no security is required; or he may decide that the attachment is insufficient and demand security in addition; or, if security has been previously ordered, he may, under § 1056c, reduce the amount. The institution of actions claiming damages by the process of attaching property of the defendant to compel his attendance in court and his response to a judgment if one is obtained is a well-known and long-established practice in our courts. In conferring power upon the commissioner in such broad language as that which is used, the legislature surely did not intend that he should refuse to take into consideration, in a determination of what, if any, security is required, the existence of a substantial attachment. In refusing to accept evidence of the attachment in the instant case, he mistook the law and abused his discretion.

The judgment of the court went further than was proper. The appeal should have been sustained and the case remanded to the commissioner for the purpose of ascertaining, in determining the amount of security to be required of the plaintiff, the value, if any, of the attachment.

There is error in the form of the judgment, it is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.