UTICA MUTUAL INSURANCE COM-
PANY, Appellant,

v.

Merle D. VINCENT, Jr., Regional Direc-
tor of the Third Region of the National
Labor Relations Board, Appellee.

No. 192, Docket 30756.

United States Court of Appeals
Second Circuit.

Argued Jan. 26, 1967.

Decided March 14, 1967.

------

Charles Barnhill, Chicago, Ill. (Philip C. Lederer, Kalvin M. Grove, Chicago, Ill., Thomas P. Schnitzler, New York City, Patrick L. Vaccaro, New Rochelle, N. Y., Lederer, Barnhill & Fox, Chicago, Ill., Morgan F. Bisselle, New Hartford, N. Y., Jackson, Lewis & Schnitzler, New York City, of counsel), for appellant.

Elliott C. Lichtman, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy, Washington, D. C., Attorney), for appellee.

Before MOORE and FRIENDLY, Circuit Judges, and BRYAN, District Judge.*

FRIENDLY, Circuit Judge:

This action was brought in the District Court for the Northern District of New York by Utica Mutual Insurance Company ("Utica"), a New York corporation, against the Regional Director of the Third Region of the NLRB. The complaint alleged that Communications Workers of America, AFL–CIO, had filed a petition seeking certification as exclusive bargaining representative of the office clerical, maintenance and cafeteria workers in Utica's main office; that the Regional Director had thereupon caused to be served a notice of a representation hearing pursuant to § 9(c) of the National Labor Relations Act and § 102.63 et seq. of the Board's Rules and Regulations; and that such a hearing had begun before a hearing officer. The gravamen of the complaint was that the provision in § 9(c) (1) that the hearing officer "shall not make any recommendations with respect thereto" deprived Utica "of its valuable property rights to a full and fair hearing on the matter of an 'appropriate bargaining unit' " without the due process of law guaranteed by the Fifth Amendment, whether decision were to be made by the Regional Director or by the Board, see Rules and Regulations § 102.-67. The complaint sought a declaratory judgment of invalidity and interlocutory injunctive relief. Finding that the complaint raised no substantial constitutional question, Judge Brennan declined to convoke a court of three judges under 28 U.S.C. § 2282 and dismissed the action.

■■ When a complaint for an injunction makes a claim of unconstitutionality which on its face would require a court of three judges under 28 U.S.C. § 2281 or 2282, the single district judge should consider whether the claim is substantial and, if he finds it is not, refuse to convoke a court of three judges and dismiss the action. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Co. v. City of Redding, 304 U.S. 252, 254–255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Wicks v. Southern Pacific Co., 231 F.2d 130 (9 Cir.), cert. denied, 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (1956); White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868, cert. denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958); Carrigan v. Sunland-Tujunga Telephone Co., 263 F.2d 568 (9 Cir.) cert. denied, 359 U.S. 975, 79 S.Ct. 893, 3 L.Ed.2d 841 (1959); Bell v. Waterfront Comm., 279 F.2d 853, 857–858 (2 Cir. 1960); Powell v. Workmen's Compensation Board, 327

* Of the Southern District of New York, sitting by designation.

F.2d 131, 138 (2 Cir. 1964).[1] This is not merely a power confided to the single district judge but an important responsibility, since the requirement of three judges "entails a serious drain upon the federal judicial system particularly in regions where, despite modern facilities, distance still plays an important part in the effective administration of justice," Phillips v. United States, 312 U.S. 246, 250, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), a burden not only on the inferior courts but, if the three judges retain the case, upon the Supreme Court by virtue of the provision for direct appeal, 28 U.S.C. § 1253.[2] Appeal from a dismissal by a single judge lies to the court of appeals. Bell v. Waterfront Comm., supra, 279 F.2d at 858, and cases there cited; cf. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). We hold that Judge Brennan properly performed his duty in this case.

■ As to the substantiality of Utica's constitutional objection, we take as our criterion the Supreme Court's statement, "The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject." California Water Service Co. v. City of Redding, supra, 304 U.S. at 255, 58 S.Ct. at 867. Utica finds in the due process clause of the Fifth Amendment a requirement that when there are issues of credibility, as was assumed to be true here, no determination of fact may be made unless the decider has either seen the witnesses himself or has been furnished with a report as to credibility by another who has, save when circumstances such as the death of a deposed witness unavoidably prevent. We discern no such absolute in the history laden words of the Fifth Amendment; Utica would freeze what is usually a sensible rule of judicial administration into a constitutional imperative.

Even on issues where due process requires a "trial type" hearing, the due process clause makes no such inexorable command as Utica asserts.[3] Chief Justice Hughes' ringing pronouncement in the first *Morgan* case, "The one who decides must hear," was preceded by a statement that "while it would have been good practice to have the examiner prepare a report and submit it to the Secre-

---

1. The classical theory, stated in Ex parte Poresky, supra, 290 U.S. at 31, 54 S.Ct. at 4, is that "the provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction." A more realistic explanation, which also justifies the rule of Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), that three judges are not required when "prior decisions made frivolous any claim that a state statute on its face is not unconstitutional," and is intimated in that opinion, is that Congress could not have intended to require three judges to be assembled when decision could not possibly go in any manner save one. This rationale would also authorize a single judge to dismiss a complaint asserting a frivolous constitutional claim in the unusual case where diversity jurisdiction existed.

2. The number of three-judge cases, other than review of orders of the Interstate Commerce Commission, has increased from 62 in fiscal 1963 and 69 in 1964 to 87 in 1965 and 90 in 1966. Administrative Office of U. S. Courts, Ann.Reps.1963 at 143, 1964 at 154, 1965 at 118, 1966 at II-36 (preliminary edition).

3. When the Constitution was adopted, it had become the settled practice in English chancery courts for evidence to be taken almost wholly by deposition. "There never was a case where witnesses have been allowed to be examined at large at the hearing; and though it might be desirable to allow this, yet the fixed and settled proceedings of the court cannot be broke through for it." Graves v. Eustace Budgel, 1 Atk. 444, 445, 26 Eng.Rep. 283 (Ch. 1737). See 9 Holdsworth, A History of English Law 353-58 (1926). 5 Wigmore, Evidence § 1417(1) (3d ed. 1940), also cites American statutes permitting the use of depositions even when the deponent is available to be called as a witness. It is unlikely that the framers could have meant to proscribe as contrary to "due process of law" such an established system, however frequently acknowledged its defects may have been.

tary and the parties * * * we cannot say that that particular type of procedure was essential to the validity of the hearing," and was followed by the explanation:

> "This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them." Morgan v. United States, 298 U.S. 468, 478, 481–482, 56 S.Ct. 906, 910–912, 80 L.Ed. 1288 (1936).

Nothing in this suggests that the decider must actually hear the witnesses or be furnished a report on their credibility; the thrust is quite the opposite.[4] Although the respondent in NLRB v. Mackay Radio & Tel. Co., 304 U.S. 333, 350–351, 58 S.Ct. 904, 913, 82 L.Ed. 1381 (1938), did not raise the precise argument advanced by Utica, the Supreme Court there sanctioned the Labor Board's transferring a case to itself at the conclusion of the testimony and deciding it without an examiner's report; Mr. Justice Roberts said, "The Fifth Amendment guarantees no particular form of procedure; it protects substantial rights," and

cited Morgan I. Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 226–229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), is in accord. With this background the framers of the Administrative Procedure Act could scarcely have doubted the validity of the provision of § 8(a) which permits an agency to require the record to be certified to it and to dispense with a hearing officer's report not only in rule making but in determining applications for initial licenses "in any case in which the agency finds upon the record that due and timely execution of its functions imperatively and unavoidably so requires." Yet the provision in § 9(c) (1) of the National Labor Relations Act here attacked is simply a general declaration by Congress, see fn. 6, that due and timely execution of the NLRB's functions in representation cases invariably requires what § 8(a) of the APA authorizes on a finding in a particular case. Courts of Appeals have ruled that when a trial examiner who had heard the evidence dies or retires before preparing his report and another examiner is designated to do this, there is no denial of due process, NLRB v. Stocker Mfg. Co., 185 F.2d 451, 453 (3 Cir. 1950); Gamble-Skogmo, Inc. v. FTC, 211 F.2d 106, 113 (8 Cir. 1954).[5] And we on our own part have recognized "that the due process clause does not require under all circumstances that factual determinations be made by the person hearing the evidence." United States v. Vater, 259 F.2d 667, 673 (2 Cir. 1958) (dictum).

In fact, however, we entertain the gravest doubt that the hearing directed in § 9(c) (1) must be of the trial type. The existing statute derives from § 9(c).

4. Utica's attempt to becloud the Chief Justice's statement and thus narrow the latitude given to administrative agencies by reference to Mr. Justice Frankfurter's comment in Morgan IV that on a later occasion the Secretary of Agriculture "held various conferences with the examiner who heard the evidence," United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941), manifestly fails; nothing in the later opinion remotely suggests that the order ultimately made would have been invali-

dated if such conferences had not been held.

5. The weight of these statements as to the requirements of due process is not eliminated by the Gamble-Skogmo holding that a new hearing was required by § 5(c) of the APA or by the disagreement of the Gamble-Skogmo court and a distinguished author, 2 Davis, Administrative Law Treatise § 11.18 at 115 (1958), with the Stocker case as an application of the APA.

of the Wagner Act, 49 Stat. 453 (1935), which had provided:

"Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertin [sic] such representatives."

The Supreme Court held in Inland Empire Dist. Council, etc. v. Millis, 325 U.S. 697, 706, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945), that the hearing need not precede the election but could follow it; commenting on the nature of the hearing, the Court said that "obviously great latitude concerning procedural details is contemplated," that "requirements of formality and rigidity are altogether lacking," that the proceeding "is not technical" but "is an 'investigation,' essentially informal, not adversary," and that "the investigation is not required to take any particular form or confined to the hearing." This seems to mean that although the Board was required to hear relevant evidence proffered by interested parties, it was not limited to such evidence or by traditional trial type hearing requirements. While the Court directed its remarks to the construction of the Wagner Act, it also noted, as would have been implicit in any event, that the Act as so construed did not violate due process. 325 U.S. at 710, 65 S.Ct. 1316.

The Taft-Hartley Act, 61 Stat. 144 (1947) considerably elaborated the sim-ple provision of its predecessor, amending § 9(c) (1) to read as follows:

"(c) (1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in section 9 (a), or (ii), assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in section 9(a); or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in section 9(a);

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

Although under the amendment the hearing must invariably precede the election,[6] neither the language of the statute nor the committee reports indicated that

6. The provision to which Utica objects was rather obviously designed to prevent this change from causing undue delay in elections. The Senate Report, taking cognizance of the fact that "Regional office personnel now sit as hearing officers in repersentation cases and make a comprehensive report and recommendations to the Board at the close of such hearing," considered it important to make clear that under the amendment "such hearing officer's duties are confined to presiding at the hearing." S.Rep. 80th Cong., 1st Sess., No. 105 at 25, reprinted in 1 Legislative History of the Labor Management Relations Act, 1947, 431.

any change in its nature was intended. Rather, although pre-election hearings "became mandatory," here as in Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 319, 53 S.Ct. 350, 77 L.Ed. 796 (1933), "The form remained the same."

■ There is much reason why a representation hearing should not have to be of the trial type. What is likely to be the prime issue, "whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof," § 9(b), is more nearly "legislative" than "adjudicative," see 1 Davis, Administrative Law Treatise § 7.02 (1958). Indeed, it bears considerable resemblance to the constitution of an electoral unit, where no one has ever supposed trial type procedures to be required. And such a hearing has another quality which has been deemed to justify departure from trial type hearing requirements—the provisional nature of any determination arising therefrom. A representation hearing is simply a preliminary to an election which may or may not result in a certification; if it does, and the employer refuses to bargain, he is entitled to present in an unfair labor practice proceeding any material evidence he was prevented from introducing at a hearing under § 9(c). NLRB v. Ideal Laundry & Dry Cleaning Co., 330 F.2d 712, 716 (10 Cir. 1964); see NLRB v. Dewey Portland Cement Co., 336 F.2d 117 (10 Cir. 1964). The Supreme Court has instructed that "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 536, 85 L.Ed. 624 (1941); see also Inland Empire Dist. Council, etc., v. Millis, supra, 325 U.S. at 710, 65 S.Ct. 1316. Cf. United States v. Illinois Central R. R., 291 U.S. 457, 54 S.Ct. 471, 78 L.Ed. 909 (1934).

■ Since we are thus convinced that Utica's constitutional argument is so clearly incorrect as to be frivolous, it becomes unnecessary to consider another ground urged by the Government to support dismissal of the complaint, namely, that regardless of the merits, judicial action at this time would have been inconsistent with the Congressional policy "that in the normal course of events Board orders in certification proceedings under § 9(c) are not directly reviewable in the courts," Boire v. Greyhound Corp., 376 U.S. 473, 476, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964)—a rule applying *a fortiori* to a suit preceding a representation hearing.[7] It does indeed seem doubtful that Utica could bring itself within Fay v. Douds, 172 F.2d 720 (2 Cir. 1949), recognizing an exception where the plaintiff makes a "not transparently frivolous" assertion of unconstitutional destruction of a property right, even if we assume that case to be still authoritative, not only because its claim in our view was "transparently frivolous" but also because Utica has no "property right" in the designation of the unit of its employees with which it may be required to bargain, even though the National Labor Relations Act entitles it to be heard thereon. See NLRB v. National Mineral Co., 134 F.2d 424, 426–427 (7 Cir.), cert. denied, 320 U.S. 753, 64 S.Ct. 58, 88 L.Ed. 448 (1943); Foreman & Clark, Inc. v. NLRB, 215 F.2d 396, 406–407 (9 Cir.), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954).

The order dismissing the complaint is affirmed.

7. While the matter may not be free from doubt, we think inability of the court to grant relief even if the constitutional claim were well founded justifies dismissal by a single judge. The three judge requirement was directed to determinations on the issue of constitutionality, not to decisions that for other reasons the court could not properly act. See D. Currie, The Three Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 24–27 (1964); cf. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).