Rafael PEREZ and Virginia Hiltz, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

John J. TYNAN, Commissioner of Motor Vehicles, Defendant.

Civ. A. No. 12859.

United States District Court
D. Connecticut.

March 26, 1969.

Bruce N. Berwald, Norman K. Janes, Tolland-Windham Legal Assistance Program, Inc., Willimantic, Conn., for plaintiffs.

Raymond J. Cannon, Stephen J. O'Neill, Asst. Attys. Gen., Hartford, Conn., for defendant.

## RULING ON PLAINTIFFS' MOTION FOR A THREE-JUDGE COURT

CLARIE, District Judge.

This action was commenced pursuant to 42 U.S.C. § 1983, in behalf of the plaintiffs and others similarly situated. They request the convening of a three-judge court, 28 U.S.C. §§ 2281, 2284, to test the constitutional validity of a vital part of the Connecticut Motor Vehicle Financial Responsibility Act, §§ 14–114, 14–117. The plaintiffs seek a declaratory judgment and permanent injunctive relief declaring that the aforesaid state laws are unconstitutional. They also request that an injunctive order issue restraining the defendant from suspending the right of the plaintiffs and others in the class they represent to operate and register motor vehicles and ordering the reinstatement to them of their full rights to operate and register motor vehicles in this State. It is represented that the challenged statutes, both on their face and as applied and interpreted by the defendant, deny to the plaintiffs and the class they represent substantive and procedural due process of law and the equal protection of the laws guaranteed and protected by the Fourteenth Amendment to the Feder-

al Constitution. The Court finds their claims to be without legal merit and accordingly dismisses the action.

### FACTS

The plaintiffs, Rafael Perez and Virginia Hiltz, were each involved in separate and unrelated motor vehicle accidents; the former on April 25, 1968 and the latter on May 16, 1968. In the Perez accident, there was damage to the property of a third party in excess of $200 and in the Hiltz accident a six-year old boy suffered bodily injury. The plaintiffs had no liability insurance at the time and neither was within the exceptions which excluded them from filing financial security under § 14–119 of the Connecticut General Statutes. Under the circumstances, the provisions of § 14–117 required each of them to deposit security with the Commissioner of Motor Vehicles, sufficient to "satisfy any judgment or judgments for damages * * *," which might be recovered against them. Their failure to comply with the law, obligated the Commissioner to suspend their respective operator's licenses and motor vehicle registrations.

Perez denied fault or liability for the accident in which he was involved. He has since commenced court action seeking damages against the operator of the other vehicle. Hiltz claimed that her vehicle, while proceeding lawfully on the highway, was run into by a bicycle being ridden by a six-year old boy; and that he was the proximate cause of the accident.

Perez was ordered to file a $280 security deposit and Hiltz a $500 deposit. Neither of them challenged the amount of their bonds as being excessive, nor did they otherwise request a review hearing or appeal the order. Both plaintiffs claim to be without adequate financial means to post the required bond. In due course, pursuant to the statutes, Perez's operating and registration privileges were suspended in Connecticut by the defendant Commissioner on September 16, 1968; and Hiltz's were likewise suspended on September 23, 1968.

### ISSUES PRESENTED

(1) Is it a denial of due process and equal protection of the laws to require security deposits from uninsured operators and owners of motor vehicles involved in accidents, without first requiring a hearing to determine fault?

(2) Is one, who is ordered to file such a security deposit deprived of equal protection of the law, if he cannot comply, because he is too poor to pay the required insurance premiums or to file the required security?

### JURISDICTION

The plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1343 (3) and (4), which provides for original jurisdiction in this Court in those suits authorized by 42 U.S.C. § 1983. In accordance with 28 U.S.C. §§ 2281 and 2284, the plaintiffs have requested that a three-judge court be convened to determine the constitutional issues raised.

It is now generally recognized that when an application for a three-judge court is filed, the Court's threshold question is whether the constitutional question raised is substantial, whether the complaint alleges a basis for equitable relief and whether the case as presented is within the requirements of the three-judge court statute.

> "When a complaint for an injunction makes a claim of unconstitutionality which on its face would require a court of three judges under 28 U.S.C. § 2281 or 2282, the single district judge should consider whether the claim is substantial and, if he finds it is not, refuse to convoke a court of three judges and dismiss the action. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Co. v. City of Redding, 304 U.S. 252, 254–255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); * * * Powell v. Workmen's Compensation Board, 327 F.2d 131, 138 (2 Cir. 1964). This is not merely a power confided to the single district judge but an important responsibility."

Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129, 130–131 (2d Cir. 1967).

Also see Green v. Board of Elections of City of N. Y., 380 F.2d 445, 448 (2d Cir. 1967), cert. denied 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968).

 Unless there is no substantial constitutional question presented, the nature of the injunctive relief sought here would normally require the convening of a three-judge court. Swift & Co. v. Wickham, 382 U.S. 111, 116–129, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963); Idlewild Bon-Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). The criteria to be considered in determining whether the issues in the complaint are "substantial" include the following: are the questions raised "obviously without merit" or does the unsoundness of these questions "clearly result[s] from the previous decisions of [the Supreme Court so] as to foreclose the subject." Utica Mutual Insurance Co. v. Vincent, *supra* 375 F.2d 129 at 131; Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bell v. Waterfront Commission, 279 F.2d 853 (2d Cir. 1960); Powell v. Workmen's Compensation Board, 214 F.Supp. 283, 286 (1963), aff'd. 327 F.2d 131 (2d Cir. 1964); Green v. Board of Elections, *supra*.

## STATUTORY CONSTRUCTIONS

No factual question has been raised as to any of the plaintiffs' allegations; and for the limited purposes of this motion, the Court will consider them as if their truth had been admitted. Sections 14–114 and 14–117 of the Connecticut General Statutes which have been challenged, are both vital parts of the state's comprehensive financial responsibility laws and regulations, which were primarily designed to protect the travelling° public. Section 14–117 requires that within 20 days after receipt of an accident report disclosing bodily injury or death, or property damage to another of $200 or more and failure to have the prescribed minimum statutory liability insurance coverage,[1] the Commissioner shall determine the amount of security sufficient to satisfy any judgment growing out of the accident. Within 90 days after receipt of the report, the Commissioner is required to suspend the license and registration of any operator who fails to post the required security. Section 14–114 requires the granting of a hearing upon the request of any person aggrieved by an order or act of the Commissioner. This statute, however, specifically directs the Commissioner not to adjudicate liability or the degree of liability. It does authorize a prompt judicial review of the Commissioner's order and it permits the court to stay the order upon the filing of any appeal.

Section 14–119 establishes the list of exceptions, wherein the posting of security is not required. It provides that the security provisions are inapplicable if only the operator himself was injured or only his property was damaged; or if he was legally parked or stopped at the time of the accident, or the vehicle was being operated without his permission. Other exclusions include circumstances wherein the other driver involved was convicted of negligent homicide, manslaughter, reckless driving, driving under the influence of intoxicating liquor or drugs, or other statutory vehicular misconduct. Additional exceptions include situations where the operator has been formally released from liability, adjudged not liable, entered into a settle-

---

1. "No such policy or bond shall be effective under this section unless it is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty thousand dollars because of bodily injury to or death of one or more persons in any one accident and, if the accident has resulted in injury to or destruction of property, to a limit of not less than one thousand dollars because of injury to or destruction of property in such accident; * * * *"

ment or been paid by an insurance carrier.

Once the suspension becomes operative, it continues until the ordered security is posted, the one-year statute of limitations runs, the operator and/or owner are adjudicated to be not liable; an agreement is reached or the judgment is paid. CONN.GEN.STAT. § 14–120. A discharge in bankruptcy will not release the operator or owner of his statutory obligations. CONN.GEN.STAT. § 14–131.

■ The Connecticut Supreme Court has for many years considered the right to operate a motor vehicle on the public highways as a purely personal privilege. Dempsey v. Tynan, 143 Conn. 202, 120 A. 2d 700 (1956); Shea v. Corbett, 97 Conn. 141, 145, 115 A. 694 (1921). However, despite the Connecticut Court's characterization, an operator's license and a motor vehicle registration are entitled to the protections of the 14th Amendment and the Court will so treat the issue.

> "(F)reedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty' which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law." Wall v. King, 206 F.2d 878, 882 (1st Cir. 1953).

■ The right of any state to require an applicant motor vehicle operator or owner to file evidence of owning an automobile insurance policy, which prescribed minimal coverage provisions has long since been found constitutional, is a pre-requisite condition to establishing his eligibility for an operator's license or registration. Ex Parte Poresky, *supra*; Miller v. Smith, 236 F.Supp. 927, 930 (1965).

The plaintiffs claim that the present law does not pose the same issue, because general compulsory liability insurance applies equally to all and is designed to afford prospective protection to the public against all accidents before they occur. In contrast the statute in controversy requires the posting of adequate security after the occurrence of an accident, without the benefit of a hearing on the issue of culpability. While the procedures followed are readily distinguishable from the usual compulsory insurance type of protection afforded to the public, the public policy considerations of both are substantially identical in nature. The philosophy behind the law is remedial; it is designed to be a persuasive force to induce motor vehicle operators and owners to voluntarily acquire a policy of minimal liability motor vehicle coverage. This approach to the problem affords a greater freedom of choice to the individual, while at the same time it accomplishes the desired result of encouraging universal automobile liability insurance. This purpose was expressed by the Connecticut Supreme Court:

> "The purpose of the legislature in enacting the financial responsibility provisions of the motor vehicle law was to keep off our highways the financially irresponsible owner or operator of an automobile who cannot respond in damages for the injuries he may inflict, and to require him, as a condition for securing or retaining a registration or an operator's license, to furnish adequate means of satisfying possible claims against him. It is remedial legislation and must be given a construction sufficiently liberal to accomplish its purpose." Dempsey v. Tynan, 143 Conn. 202, 208, 120 A.2d 700, 703 (1956).

The plaintiffs claim, however, that the present law is arbitrary and capricious, because it does not relate to the attainment of the public policy sought to be corrected. Their rationale is that while it may be proper for the state to impose statutory restrictions and requirements on operators who have demonstrated irresponsibility or lack of ability in driving, mere involvement in an accident without fault or liability, is not a rational basis on which to require proof of financial responsibility; thus they contend their rights to due process have been denied. It is also represented that the law is not

designed to afford protection for the safety of the general public, because the thrust of the Act in no way excludes from the highways, the reckless or careless drivers. The Act simply requires proof of liability insurance at the time of the accident or the posting of an adequate security bond. Thus it is claimed that since there is no realistic relationship between the protection of the public safety and the procedures afforded under the law, the Financial Responsibility Act violates the due process clause of the 14th Amendment.

The challenged sections of this law constitute but a small part of the overall body of automobile liability insurance law relating to the administration of license suspensions or revocations. The enforcement provisions generally afford an administrative hearing, either before or after action has been taken against a license. In this situation a hearing is provided, but the matters to be considered and the discretion to be exercised are strictly limited to the amount of security required. This limitation, which excludes the issue of fault or liability, is thus the focal point of the plaintiffs' attack; it is claimed to be a violation of both substantive and procedural due process.

The plaintiffs have chosen to conceive of the statutory purposes of these laws narrowly. They have limited their perspective to what has been described as the arbitrary action of the state in revoking a license or registration without first holding an administrative hearing on the question of fault or liability. There is an innate repulsion in the heart of every person who thirsts for liberty, not to be deprived of any right or privilege, without first being offered the right to be heard on the issue of culpability.

There can be no question, but that state legislature has the constitutional right to legislate in this area of the law for the protection of the public, to achieve the goals which are inherent under its police powers.

"Financial-responsibility laws are intended to discourage careless driving or to mitigate its consequences by requiring as a condition of licensing or registration the satisfaction of outstanding accident judgments, the posting of security to cover possible liability for a past accident, or the filing of an insurance policy or other proof of ability to respond in damages in the future." Kesler v. Department of Public Safety, 369 U.S. 153, 158, 82 S.Ct. 807, 811, 7 L.Ed.2d 641 (1962).

When a license to operate is granted, where individual fitness has been found, a license is issued upon the implied condition that all lawful statutory requirements will be met. The license is received with full knowledge of these laws and the licensee accepts it with the implied understanding that he will conform to them.

When one rationalizes the overall concept of law enforcement, which the state legislature has adopted in this area, it becomes apparent that it deliberately refrained from compelling every motorist to insure his vehicle or insure his license before driving on the public highway; but it said to him by implication, that if you don't carry insurance and you become involved in an accident, you will be required to file proof of financial responsibility to satisfy any judgment which might arise out of that accident. This latter requirement expressly excluded a determination of the element of fault, except in several clear cut categories, which have been outlined above. While the thrust of the law does not initially exclude all reckless or careless drivers from the highways, it does encourage every driver as a matter of free choice to acquire voluntarily at least a minimal liability protection, thus guarding against the eventuality of an accident and the resulting discipline of posting the financial security. This rule is applicable to everyone; there is no arbitrary classification or treatment of persons. In limiting the reasons for terminating the operating privilege, the legislature was only required to provide reasonable assurance that the petitioners had offended one of the specified statutory grounds and that

its enforcement was not arbitrary or capricious. Smith v. California, 336 F.2d 530, 534 (9th Cir. 1964); Wall v. King, *supra* 206 F.2d at 883.

> "As stated in Rosenblum v. Griffin, *supra* (89 N.H. 314, 197 A. [701] 704, 115 A.L.R. 1367): 'So far as classification is here involved, no one is unconstitutionally denied the privilege of the use of the highways with a motor vehicle. The terms and conditions of the privilege are applicable to all who avail themselves of it. They may be unfair and unreasonable, in fact, but they are not invalid. There is equality of treatment. Every licensee takes his license on the condition that if he meets with an accident while operating a car, his further right to operate shall depend upon his having or furnishing security for any liability arising out of the accident or any future accident. * * * So long as the statute does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground.'" Hadden v. Aitken, 156 Neb. 215, 55 N.W.2d 620, 624 (1952).

Nor is this law which plaintiffs have attacked as arbitrary and capricious unique in Connecticut. Laws similar to §§ 14–114 and 14–117 have been enacted in 49 states and the District of Columbia. Kesler v. Department of Public Safety, *supra,* 369 U.S. at 165–168, 82 S.Ct. 807; Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, 139 (1963).

Constitutional due process is not offended, merely because a security deposit may be ordered by the Commissioner without first determining fault. This issue has been before the state courts on numerous occasions, where substantially identical statutes were in question on the same issue:

> "We agree with the Court of Civil Appeals in its decision that the Act does not authorize the Department to determine questions of liability or fault on the part of persons involved in an accident before fixing the amount of security required and suspending the licenses of operators and the registration of owners. According to the terms of section 5, subdivisions (a) and (b), it is the duty of the Department to determine the amount of security and to suspend the licenses and registrations of operators and owners involved in the accident without undertaking to ascertain who was at fault or who may be liable for damages. Questions of liability or fault are for the courts to determine in suits brought for that purpose. As said by the Court of Civil Appeals, the Act 'undertakes to require security so that in the event fault is later established in a suit instituted for that purpose, the wronged party will not have an empty judgment.'" Gillaspie v. Department of Public Safety, 152 Tex. 459, 259 S.W.2d 177, 181 (1953).

See: Ballow v. Reeves, 238 S.W.2d 141, 142 (Ky.1951); Larr v. Dignan, 317 Mich. 121, 26 N.W.2d 872 (1947); Doyle v. Kahl, 242 Iowa 153, 46 N.W.2d 52 (1951); Franklin v. Scurlock, 272 S.W.2d 62 (Ark.1954); Agee v. Kansas Highway Commissioner of Motor Vehicles, 198 Kan. 173, 422 P.2d 949 (1967); Oliveira v. Department of Public Safety, 309 S.W.2d 557, 560 (Tex.Civ.App.1958).

An exception to the foregoing rule is expressed in the interpretation of the Arizona statute where the court found that a hearing was required to determine whether there was a "reasonable possibility" that judgment would be entered against the uninsured motorist. Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963); Farmer v. Killingsworth, 102 Ariz. 44, 424 P.2d 172 (1967). It should be noted, however, that in deciding the scope of the hearing, the Arizona courts were construing a statute which, unlike the Connecticut statute, was silent on the issue. Thus, the Arizona courts were faced with the interpretation of an ambiguous statute and the cases turned in large part on the issue of legislative intent. Furthermore, the scope of the

hearing in Arizona has been sharply limited. Burri v. Campbell, 102 Ariz. 541, 434 P.2d 627 (1967). While it might be argued that a better legislative policy would require the showing of a reasonable possibility of liability, that is not the legal question before the Court.

The second issue raised, namely, that the law discriminates against the poor who are financially unable to pay either the required insurance premium or a security deposit and more specifically that it discriminates against these plaintiffs, is frivolous on its face. The principle of compulsory automobile liability insurance has long been recognized to be within the inherent regulatory police powers of the legislature; see Ex Parte Poresky, *supra*. The statute under attack is in fact fairer to poorer citizens than the compulsory insurance laws.

"Financial responsibility laws such as this do not unconstitutionally discriminate against the poor. * * * Those damaged by the negligence of indigent drivers may be indigent also, and as little able as the drivers to bear the cost of such negligence. The fallacy of the argument that the law favored the rich over the poor 'lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right, and not of enjoyment.' * * * Those who cannot afford to possess automobiles are as little able to enjoy the opportunity of driving on the public highways as those who cannot afford insurance or security." Escobedo v. State Department of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1, 6 (1950).

■ The plaintiffs' claims of unconstitutionality are without merit. No substantial federal constitutional question has been raised for adjudication; therefore the plaintiffs' requests for the convening of a three-judge court are denied and the action is ordered dismissed. So ordered.