**John LATHAM and Rachel Greene, Plaintiffs-Appellants,**

v.

**John J. TYNAN, Commissioner of Motor Vehicles, State of Connecticut, Defendant-Appellee.**

**No. 73, Docket 34668.**

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1970.

Decided Dec. 16, 1970.

hicles from suspending their right to operate and register motor vehicles. District Judge Clarie ruled that the plaintiffs' claims of unconstitutionality are without merit, and that no substantial federal constitutional question had been raised for adjudication. Accordingly, he entered his order denying the application for the convening of a three-judge court, and the action was dismissed. We are satisfied that there was no error, and we affirm.

Section 14–117(b) of the Act commands that the commissioner within ninety days after receipt of a report of a motor vehicle accident shall suspend[2] the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in that accident, "unless such operator or owner or both deposit security" in a sum as determined by the commissioner, pursuant to § 14–117(a). Here, the Commissioner required Latham to deposit such security in the amount of $900. Greene, a participant in an unrelated accident, was required to deposit security in the amount of $3,100. Latham and Greene contend that they were not at fault in such accidents and that because of their poverty they are unable to provide the security prescribed by the Commissioner.

They argue that the pertinent Connecticut statutes are unconstitutional as arbitrarily discriminatory as to nonculpable uninsured motorists, like themselves and all other similarly situated who are too poor to post security deposits, and they thus are denied equal protection of the laws. Further, they submit that they are deprived of their property without due process of law in that they are penalized by loss of rights to register and operate motor vehicles without an opportunity to be heard,[3] and the

Bruce N. Berwald and Norman K. Janes, Willimantic, Conn. (William H. Clendenen, Jr., Joanne Faulkner, New Haven, Conn., and Elliot R. Taubman, Hartford, Conn., of counsel), for plaintiffs-appellants.

Robert K. Killian, Atty. Gen. of Conn., and Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for defendant-appellee.

Before DANAHER,* FRIENDLY and HAYS, Circuit Judges.

DANAHER, Senior Circuit Judge:

Appellants, predicating their action upon 42 U.S.C. § 1983, asked that a three-judge district court be convened to declare that the Connecticut Motor Vehicle Financial Responsibility Act[1] is unconstitutional, and thereupon that the court order a permanent injunction restraining the Commissioner of Motor Ve-

---

* Senior United States Circuit Judge of District of Columbia Circuit, sitting by designation.

1. Sections 14–113 through 14–133, Connecticut General Statutes Annotated (1958).

2. With certain exceptions specified in § 14–119, not here pertinent.

3. Section 14–114(a) specifically prohibits the commissioner from making a determination as to fault or liability.

Section 14–114(b) provides that any order of the commissioner under the provisions of the pertinent sections shall be subject to prompt review by appeal to the court of common pleas. That court is empowered to determine whether

statutes as administered constitute a bill of attainder, penalizing them without the safeguards of judicial process.

## I.

■ However vexatious the question in some circumstances,[4] there would now seem to be no question that the appellants have properly here sought review. In Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967), the Supreme Court ruled flatly:

> Appellants seek review by this Court of the refusal by the District Court to convene a three-judge District Court pursuant to 28 U.S.C. §§ 2281–2284. We have held that such review is available in the Court of Appeals, Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794, and not in this Court, Buchanan v. Rhodes, 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3.

Thus specifically the Court interpreted its holding in Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962), where it was pointed out that the District Court's inquiry is appropriately limited to "determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

In Buchanan v. Rhodes, *supra*, the Court had granted a motion to dismiss, leaving review, obviously, to the Court of Appeals. Again, in Wilson v. City of Port Lavaca, Tex., 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636 (1968), the Court pointed out that when a "single Judge declines to convene a three-judge Court and denies relief: an appeal lies to the appropriate United States Court of Appeals, and not to this Court. Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865."

## II.

■ Since the complaint on its face disclosed to Judge Clarie the absence of a substantial federal claim, he perceived that a three-judge court was not required.[5] Moreover, various decisions of the Supreme Court supported the constitutional authority of the State to act in the interest of public safety. Mr. Justice Frankfurter observed that the police power of a State, "especially when exerted for the protection of life and limb, is as pervasive as any of the reserved powers of the States and should be respected unless there is a clear collision with a national law which has the right of way under the Supremacy Clause of Article VI."[6] He recognized that the

---

the filing of the appeal shall operate as a stay of the commissioner's order and may modify, or affirm or reverse the order in whole or in part.

Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), cited by the appellants, is readily distinguishable. In that case there was no "situation requiring special protection to a state," *id.* at 339, 89 S.Ct. at 1821, 23 L.Ed.2d 349. Accordingly the prejudgment garnishment of a debtor's wages at the instance of a private creditor was condemned where the sole opportunity to be heard came after the taking. Here, there has been no showing that the appellants had even sought whatever relief might have been afforded pursuant to Section 14–114(b), *supra*.

4. Swift & Co. v. Wickham, 382 U.S. 111, 116, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965),

overruling Kesler v. Dept. of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962); compare Heaney v. Allen, 425 F.2d 869 (2 Cir. 1970); Gold v. Lomenzo, 425 F.2d 959 (2 Cir. 1970); and Miller v. New York Stock Exchange, 425 F.2d 1074 (2 Cir.), cert. denied 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). And see White, J., concurring in Gunn v. University Committee, 399 U.S. 383, 391, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970).

5. Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); compare Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

6. No "national law" was here involved as in Kesler v. Dept. of Public Safety, 369 U.S. 153, 172, 82 S.Ct. 807, 819, 7 L.Ed. 2d 641 (1962) overruled on other grounds, Swift & Co. v. Wickham, supra, n. 4, 382 U.S. at 116, 86 S.Ct. 258, 15 L.Ed.2d 194.

financial responsibility laws of the various States "are intended to discourage careless driving or to mitigate its consequences by requiring as a condition of licensing or registration * * * the posting of security to cover possible liability for a past accident, or the filing of an insurance policy or other proof of ability to respond to damages in the future." [7]

The theme thus treated reflects the long-asserted position of Connecticut:

The purpose of the legislature in enacting the financial responsibility provisions of the motor vehicle law was to keep off our highways the financially irresponsible owner or operator of an automobile who cannot respond in damages for the injuries he may inflict, and to require him, as a condition for securing or retaining a registration or an operator's license, to furnish adequate means of satisfying possible claims against him. It is remedial legislation and must be given a construction sufficiently liberal to accomplish its purpose.[8]

▪ And so in state after state, the courts have found [9] that underlying the financial responsibility statutes is the valid legislative purpose to promote safety on the highways and financial responsibility on account of damages done by motor vehicles and their operators. Con-

necticut, had it chosen to do so as a matter of policy, could have conditioned the licensing to operate and the registration of motor vehicles only upon compliance with some compulsory insurance requirement. Instead, Connecticut has adopted the modified form of protection here challenged. Although some may not be in position after the occurrence of an accident to make the required deposits and so may not enjoy the opportunity of driving on the public highways, it is equally true that many cannot afford even to purchase an automobile. When Judge Clarie here perceived no denial of equal protection of the laws and no failure to afford due process in the circumstances shown, we think he correctly discerned that there had been presented no substantial constitutional question. Accordingly he properly [10] denied the motion that a three-judge court be convened.

### III.

▪ We find no merit in appellants' contention that requiring security here operated as a bill of attainder. The requirement is not at all a penalty. The State has imposed conditions which in the first place must be satisfied even before any resident may lawfully register for use or operate a motor vehicle upon the State's highways. When a driver

---

Compare Perez v. Campbell, 421 F.2d 619 (9 Cir., Jan. 26, 1970), cert. granted 400 U.S. 818, 91 S.Ct. 71, 27 L.Ed.2d 45, Oct. 13, 1970, where judgment debtors invoked Section 17 of the Bankruptcy Act, only to find conflict with the Arizona licensing and registration act.

7. Kesler v. Dept. of Public Safety, supra, n. 6, 369 U.S. at 158–159, 82 S.Ct. at 811, 7 L.Ed.2d 641. The opinion traces the development of comparable statutes in various States including, particularly at 167, n. 31, the very statutes comprising the Connecticut Financial Responsibility Act.

8. Dempsey v. Tynan, 143 Conn. 202, 208, 120 A.2d 700, 703 (1956).
Directly reflecting and recognizing Connecticut policy is Perez v. Tynan, D.C., 307 F.Supp. 1235 (1969), wherein the plaintiffs raised points presented here.

The Perez counsel, appearing in behalf of Tolland-Windham Legal Assistance Program, Inc., thereafter instituted the instant action.
As to State policy in Massachusetts see MacQuarrie v. McLaughlin, 294 F.Supp. 176 (D.Mass.1968), affirmed 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969).

9. See, e. g., Escobedo v. State Dept. of Motor Vehicles, 35 Cal.2d 870. 222 P.2d 1, 6 (1950).

10. See Part I, supra, and Perez v. Tynan, supra, n. 8. Now pending in the Supreme Court in Docket No. 495, Gaytan v. Cassidy, 39 L.W. 3109, is a motion to dismiss or affirm filed by the Attorney General of Texas, in an appeal from denial of relief by a three-judge court in the Western District of Texas, April 10, 1970, 317 F.Supp. 46. Cf. Perez v. Campbell, supra, n. 6.

shall have demonstrated his fitness qualifications and shall have paid the required fee, an operator's license may be issued to him. So the State likewise requires the payment of registration fees not only for revenue purposes in administering its laws, but in furtherance of identification of the owner of vehicles and of the vehicles themselves.[11] Not here or elsewhere has it been advanced that those too poor to pay such fees shall nevertheless receive the State's permission to operate or to register a motor vehicle.

Here the State merely has taken one further step. Its statutes have simply prescribed in the respects considered, certain additional pre-conditions for continued use of the State's highways, and they are in no sense penal within the ambit of a bill of attainder. The evident purpose of Connecticut's statutes so clearly appears that no merit can be perceived in appellants' final claim.[12]

Affirmed.

FRIENDLY, Circuit Judge (dissenting):

The issue here is not whether Connecticut's Motor Vehicle Financial Responsibility Act is unconstitutional but whether plaintiffs' claim of unconstitutionality was unsubstantial "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court [the Supreme Court] as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938). While I hope Congress will soon dispense with the necessity of making this preliminary determination and allow a single district judge to proceed directly to the merits, we must respect 28 U.S.C. § 2281 so long as it remains with us.

If Connecticut had required all automobile owners to carry liability insurance or post security, the claim of constitutional invalidity would indeed be unsubstantial as a result of Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). It is argued that if Connecticut could thus have barred its roads altogether to persons not assuring in advance that at least some payment would be made for injuries inflicted by automobiles owned or operated by them, it can take the seemingly less onerous step of allowing motor vehicles to be operated without any such protection until an accident occurs and then suspend the license of the operator and all registrations of the owner unless security is filed.

While I believe I would ultimately be persuaded to that view, the arguments to the contrary are sufficiently substantial to require consideration by a court of three judges, as has occurred in actions attacking similar statutes of other states —sometimes with less than a unanimous result. However valid the axiom "the greater includes the lesser" may be in mathematics, Frost v. Railroad Comm'n of California, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926), and its numerous progeny, including Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), have demonstrated it to be an exceedingly unsure guide in constitutional law. Connecticut's Motor Vehicle Financial Responsibility Act raises questions under both the equal protection and the due process clauses of the Fourteenth Amendment that a compulsory liability insurance statute does not.

The Connecticut statute requires security to be posted by an uninsured careful driver who has been the unfortunate victim of another's fault or of unavoidable accident, whereas the uninsured careless driver is placed under no such burden so long as his luck holds. The discrimination can hardly be justified in terms of keeping uninsured careless drivers off the roads, since by hypothesis the second driver is more likely to cause

11. Dempsey v. Tynan, *supra*, n. 8.

12. Trop v. Dulles. 356 U.S. 86, 95–96, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); cf.

Garner v. Los Angeles Board, 341 U.S. 716, 722, 71 S.Ct. 909, 95 L.Ed. 1317 (1951).

a liability-producing accident than the first. The prime justification must therefore lie in prodding the first driver to provide a fund that may or may not be needed to compensate for the accident that has occurred, whereas the second driver is a step further removed. This may indeed be a sufficient justification but I cannot regard the argument against it as insubstantial in these days of more intensive judicial inquiry with respect to equal protection claims. Cf. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed. 2d 1485 (1957).

Similar considerations apply to the due process attack. Whereas compulsory liability insurance gives an injured plaintiff no particular leverage to obtain satisfaction of an unmeritorious claim from a guiltless defendant, § 14–117(a) of the Connecticut Act provides that security shall not be required if within twenty days the person who would otherwise be required to file security has been released from liability or "has executed a duly acknowledged written agreement providing for the payment of an agreed amount in instalments with respect to all claims for injuries or damages resulting from the accident." The power thus conferred on the prospective plaintiff to force an unjust settlement upon an owner or operator who is obliged by economic necessity to keep his car on the road in order to retain his job, as is true of many workers whose homes or places of employment are without accessible public transportation, is quite reminiscent of what the Supreme Court found constitutionally offensive in Sniadach v. Family Finance Corp., 395 U.S. 337, 341–342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

I do not understand so much of the distinction of *Sniadach* in fn. 3 of the majority opinion as rests upon the supposed superiority of § 14–114(b) of the Connecticut Act, providing limited review of a direction of the Commissioner of Motor Vehicles to post security or suffer license suspension, over the Wisconsin procedure for pre-judgment attack on garnishment that *Sniadach* held insufficient. Wisconsin case law recognized the right of a defendant to move immediately to quash a garnishment "so as to correct or prevent any abuse or misuse of such process," including the right to show that no good faith controversy existed. See the dissenting opinion of Mr. Justice Black, 395 U.S. at 346, 89 S.Ct. at 1825, 23 L.Ed.2d 349, and Family Finance Corp. v. Sniadach, 37 Wis.2d 163, 173–174, 154 N.W.2d 259, 265 (1967), quoting Orton v. Noonan, 27 Wis. 572 (1871). In contrast, the Connecticut Commissioner is expressly precluded from considering liability or degree of liability, § 14–114(a). Thus, so far as uninsured motorists are concerned, review of the Commissioner's order under § 14–114(b) would on the whole be limited to questions whether they came within § 14–119's exceptions for the operator or owner of a vehicle that was legally parked, the owner of a vehicle being used without his permission, or the operator or owner of a vehicle that was legally stopped at a stop sign or at the direction of a police officer or "was in a line of * * * at least three motor vehicles"—the last itself a rather capricious distinction. In addition, § 14–114 (b) might allow a court to review the Commissioner's determination of the appropriate sum for security, though the scope of review here is likely to be quite limited. The important point is that § 14–114(b) gives the court no power to examine the issue of liability even when the claim is frivolous. A holding that the analogical force *Sniadach* would otherwise possess does not require a determination of lack of due process thus must rest upon a view that the interests protected by the Connecticut Financial Responsibility Act are much stronger or the interests adversely affected much weaker than those in *Sniadach,* or upon the possibility of avoiding the problem by taking out insurance. There may, indeed, be sound basis for such a holding, but, before deciding that issue, I would want some evidence as to how much hardship the Connecticut statute has caused and how much good it has done.

While I thus cannot conscientiously join in affirming the refusal to ask for the convening of a three-judge court, my concern is greatly lessened by the fact that a decision of such a court sustaining a similar law of another state may shortly receive consideration by the Supreme Court, Gaytan v. Cassidy, 317 F.Supp. 46 (W.D.Tex.1970), appeal docketed as No. 495 for the September Term 1970, 39 U.S.L.W. 3067 (Aug. 11, 1970).